521 P.2d 654

Earlene K. JAGOW, Plaintiff-Appellant,

v.

Bill CHILD, as commissioner of the Department of Public Assistance, State of Idaho, Defendant-Respondent.

No. 11221.

Supreme Court of Idaho.

April 22, 1974.

Charles W. Fawcett, Caldwell, for plaintiff-appellant.

W. Anthony Park, Atty. Gen., Richard C. Russell, Boise, for defendant-respondent.

McFADDEN, Justice.

This is an appeal from a judgment and decree of the district court affirming the ruling of an administrative hearing officer [1] which held that the respondent Department of Public Assistance properly terminated a public assistance grant, Aid For Dependent Children (AFDC), to appellant Earlene K. Jagow for herself and her two children.

Initially the Department granted assistance to appellant upon her request. Upon termination of such assistance by the department following an administrative hearing before a department hearings officer, she petitioned the district court seeking a declaratory judgment under the provisions of I.C. § 67–5207 to determine the validity of Section 3243.4 and Section 3246 of Vol. III of the Idaho Department of Public Assistance Manual of Operating Policies and Procedures. In her petition she also sought a review under the provisions of I. C. § 67–5215 challenging the department's order denying her administrative appeal.

In the district court the parties stipulated that the court should decide the case on the basis of the pleadings on file and the briefs to be submitted by the respective parties. Briefs were submitted, and the

1. The Department of Public Assistance became denominated the Department of Social Rehabilitation Services by S.L.1972, Ch. 196. By S.L.1973, Ch. 87, the Department of Social Rehabilitation Services was merged with other departments under the name of Department of Environmental and Community Services. Dr. James A. Bax is now the administrator of this department. However, throughout the opinion the previous name will be employed.

trial court entered its findings of fact and conclusions of law. In its decree based on the findings of fact and conclusions of law, the court affirmed the decision of the hearing officer terminating appellant's public assistance grant.

Appellant appeals from this decision of the trial court. In her assignments of error she claims the trial court erred in affirming the hearing examiner's decision, that the trial court erred in its conclusions of law defining her obligation to seek support from her absent husband, and she further assigns as error the trial court's conclusion that Sections 3243.4 and 3246 of Volume III of the Manual of Operating Policies and Procedures of the Idaho Department of Public Assistance are valid.

In order to fully comprehend the import of appellant's attack on the trial court's conclusions of law and decree which affirms the hearing examiner's decision it is necessary first to examine the conclusion of law entered by the hearing examiner. The pertinent conclusions of law by the examiner are as follows:

"II

"It is concluded that Idaho Code 56–210 requires that the amount of public assistance awarded to a recipient will be computed 'with due regard to the income and resources available to him from whatever source.' Petitioner failed to take reasonable efforts to secure support for her children, as she knew the location of the absent father and could have secured the services of the local Prosecuting Attorney to file an action against him under the Uniform Reciprocal Enforcement of Support Act. Counsel for petitioner urged that the Department of Public Assistance was obligated to institute action for support against the father of petitioner's children by virtue of Paragraph 2 of Section 3243.2 of the Department's Manual of Operating Policies and Procedures and Idaho Code 7–1055; however, an analysis of Section 3243.2 of the Manual, supra, indicates

that the Department is obligated to locate the absent father 'for the purpose of (A) reuniting the family if possible, (B) obtaining support so far as possible, . . . .' Since petitioner knew where her husband was located, such an action on the part of the Department would seem unnecessary. Idaho Code 7–1055 empowers the State to take action against an absent father in cases such as this, but in no sense places an obligation upon the Department to do so; therefore, it is concluded that for a period of four months petitioner failed to take reasonable action against her husband to secure support for her children; that she failed to take advantage of an available resource and thereby rendered herself ineligible for a public assistance grant."

"III

"It is concluded that Section 3243.2 of the Department's Manual of Operating Policies and Procedures was promulgated in accordance with the provisions of Idaho Code 56–202b [56–202(b)] and 67–5203 et seq., and that implementation of these regulations was within the statutory power of the Commissioner; that these requirements do not conflict with the provisions of the Constitution of the United States or that of the State of Idaho."

The challenged regulations read:

"3243.4

\* \* \* \*

(2) If the amount of support is insufficient to meet the needs of the family and the parent refuses to provide the necessary support, the mother will be required to take the necessary legal action to secure support, if assistance is to be paid." (Since the hearing before the hearing examiner this provision has been revised.)

"3246

For continuing eligibility in cases of deprivation of support by reason of continued absence from home where there is divorce, legal separation, or desertion,

the remaining parent (or eligible relative) will be expected to utilize all reasonably available means to secure support from the absent parent. If the Parent fails to utilize such means to secure support, assistance will be discontinued."

These regulations require a mother (or eligible relative) to "take the necessary legal action to secure support" from the absent father and the mother "will be expected to utilize all reasonably available means to secure support from the absent parent."

The department terminated appellant's public assistance because she allegedly failed to take legal action to obtain support from her absent husband. At the hearing before the examiner, the department presented two witnesses, Miss Kiele and Mrs. Walters, both of whom were employees of the department. Mrs. Walters testified that the assistance award was terminated because they believed that Mrs. Jagow had not taken all possible action to secure support—"that she had not exhausted all possible means of securing support." On cross-examination Mrs. Walters admitted that the department's rules require that the department must assume the responsibility to assist the wife and mother in securing the legal action necessary to obtain support. However, Mrs. Walters was unable to state whether that was done. Miss Kiele testified that she could not remember telling Mrs. Jagow that her case could be prosecuted under the Uniform Reciprocal Enforcement of Support Act (I.C. § 7–1048 et seq.), notwithstanding the fact divorce proceedings had started.

At the hearing Mrs. Jagow testified that her husband had left her in November 1970. She testified that she sought assistance from the Department of Public Assistance and was told that "I'd have to start a divorce before I could get public assistance, and I went to the lawyer." She then engaged a lawyer in Orofino and paid him $5.00 which she had obtained from her parents, who were on welfare and unable to advance further funds for the divorce.

Her attorney wrote her husband for money to proceed with the divorce without success. She phoned her husband, who was in Oregon, and requested funds for the divorce also without success. She stated that her husband had previously supported the family, but knew that the "work isn't very good down there. He's a roofer. It rains a lot." She testified that she owned a car worth about $20.00 but had no other assets that could be sold to raise money for the divorce.

The attorney who represented Mrs. Jagow at the hearing stated in closing argument:

"If they were dissatisfied with her process, her progress, in obtaining support, they could have done it on their own behalf. They have a clear legislative mandate to do so. They failed to do that and as a consequence of their failure to prosecute this case they, on their own initiative, have driven, or attempted to drive Mrs. Jagow off the welfare rolls."

Following this the hearing examiner stated:

"Thank you. The testimony wasn't too clear to me as to exactly what advice was given by the caseworker to Mrs. Jagow. Miss Kiele, do you recall whether or not you gave Mrs. Jagow advice as to how to pursue this?

"A. [Miss Kiele] I didn't advise her to seek legal action under the Reciprocal Support Act.

"Q. What did you tell her?

"A. I told her that since she hadn't ·asked for temporary support or that the divorce hadn't been completed that support would need to be obtained since she had been in contact with her husband through phone calls and letters and that this last time when she came into the office she had said that he had called her the night before and that she had talked to him and that he had sent her income tax forms to be signed by her so he could get the refund for about $500.

"Q. Did you tell her that it would be necessary that she take some legal action to secure support?

"A. Yes I did. I told her this each time she came into the office.

"Q. But you didn't spell out what kind or how she should go about this?

"A. No, I didn't."

Idaho has elected to participate in the AFDC program. Idaho Code, Title 56, Ch. 2. In compliance with the Federal Social Security Act of 1935 the legislature defined children qualifying under the AFDC program as "needy dependent children." I.C. § 56–201(*l*). The legislature authorized the department to "[d]efine dependent children in such terms that will meet the requirements for federal financial participation in aid to dependent children payments." I.C. § 56–202. The department's Operating Policies and Procedures, Vol. III, § 3240, provides in part:

"The following conditions must be met to qualify for Aid to Dependent Children:

(1) The child must be needy;

(2) The child must be deprived of parental support by reason of death, continued absence from home, or physical or mental incapacitation of a parent or parents;

(3) The child must be under the age of 18, or under 21 years of age and in regular attendance in school;

(4) The child must be living with relatives as specified in Manual Section 3248.-1;

(5) The residence qualifications specified for Aid to Dependent Children in Sec-

tion 3211 must be met by the child or relatives with whom the child is living."

The department has not questioned the need or dependence of appellant's children. In fact, on the basis of the record before us the children meet the qualifications of the federal Social Security Act of 1935 for AFDC payments.

The record reflects that the department neither advised Mrs. Jagow specifically what the department expected her to do to secure funds from her husband, nor did it explain to her in detail her obligations in that regard, nor did the department advise her of the availability of the provisions of the Uniform Reciprocal Enforcement of Support Act, I.C. § 7–1048 et seq., as an avenue to obtain support from her husband. The department took no affirmative action in her behalf to obtain support directly from the absent husband, although it was authorized by statute to do so. I.C. § 7–1055. Under the facts as presented by this record, it is the conclusion of the court that the hearing examiner and the trial court misinterpreted the obligation of the department to adequately explain to appellant the available remedies she could pursue in an effort to get support from her absent husband, and then to discuss with appellant in detail her obligation to reasonably pursue such remedies. Thus, it is the conclusion of the court that the hearing examiner and the trial court were in error, and that the case must be reversed and remanded for reconsideration at the department level in order that appellant may be advised as to her obligations.[2]

2. This conclusion is further buttressed by action of the federal social and rehabilitation service of the Department of Health, Education and Welfare, in amending its rule, § 233.90(b) as follows:

"(b) Condition for plan approval.—(1) A child may not be denied AFDC either initially or subsequently 'because of the conditions of the home in which the child resides,' or because the home is considered 'unsuitable,' unless 'provision is otherwise made pursuant to a State statute for

adequate care and assistance with respect to such child.' (Sec. 404(b) of the Social Security Act.)

"(2) * * *.

"(3) * * *.

"(4) A child may not be denied AFDC either initially or subsequently because a parent or caretaker fails to assist:

(i) In the establishment of paternity of a child born out of wedlock; or

(ii) In seeking support from a person having a legal duty to support the child;

**834**

Since this appeal is being disposed of on other grounds, this court does not reach or consider the constitutional issue presented by appellant.

 The case being reversed, it is proper for this court to call attention to another problem presented by the record on this appeal. I.C. § 1–205. In particular, the record discloses a practice which is inimical to the judicial process. After appellant's AFDC payments were terminated, she timely appealed that decision, and the case was heard by a hearing officer, who rendered his opinion in support of termination of the payments. Appellant then appealed to the district court from that ruling. On the appeal before the district court and also on the appeal before this court the same individual, who served in the capacity as the hearing officer, then represented the department on those appeals. This procedure casts both the hearing officer and the appellant-claimant in untenable positions. A claimant must doubt that she received fair and impartial consideration of her case in the hands of a hearing examiner who upon a subsequent appeal then takes the role of a partisan opponent. This is a practice that cannot be tolerated, and attorneys who serve as hearings examiners should be insulated insofar as possible from other duties within such agency.

The judgment of the trial court is reversed and the cause remanded for further proceedings at the department level. The department shall reinstate the appellant's eligibility for AFDC payments, and shall apply the provisions of Section 3344 of Vol. III of the Idaho Department of Public Assistance Manual of Operating Policies and Procedures in computing the retroactive payments to which appellant may be entitled. The department shall also properly and fully advise the appellant of the requirements of the department and discuss with appellant her obligations in that regard. In the event of refusal by appellant to reasonably comply with these requirements within the limits of her capabilities, the department may take such action as the case justifies. Costs to appellant.

SHEPARD, C. J., and DONALDSON, McQUADE and BAKES, JJ., concur.

---

But neither this nor any other provision of these regulations should be construed to require that provision be made by a State in its AFDC program for the maintenance of a parent or caretaker who fails to provide such assistance and AFDC may be denied with respect to such parent or caretaker." Fed.Register, Vol. 38, No. 85, 10940.

The foregoing amendment was adopted April 19, 1973, to be effective July 2, 1973, after notice was given in Fed.Register, Vol. 37, No. 244, 27637. In the notice, it is stated: "The proposed regulations implement the U. S. Supreme Court decision in 'Townsend v. Swank,' December 20, 1971, regarding age and school attendance requirements in AFDC and the U. S. Supreme Court's summary affirmances in 'Juras v. Myers,' 'Weaver v. Doe,' and 'Carleson v. Taylor,' prohibiting the denial of AFDC to otherwise eligible children on the basis of a caretaker relative's refusal to cooperate in establishing paternity or seeking support for dependent children."

It is recognized that the amendment was not effective until after this appeal was argued. The amendment is discussed merely to reflect that the U. S. Department of Health, Education and Welfare was cognizant of the problem and has acted to correct it.