523 P.2d 818

**AVONDALE IRRIGATION DISTRICT et al., Plaintiff-Respondents,**

**v.**

**NORTH IDAHO PROPERTIES, INC., an Idaho corporation, et al., and the unknown owners and the unknown claimants and/or unknown heirs and/or unknown devisees of any deceased person, having, claiming or asserting any interest in and to those waters of Hayden Lake, located within Water District No. 93, Kootenai County, Idaho, Defendants,**

and

**United States of America, Intervenor-Appellant,**

and

**Robert J. Adamson et al., Intervenors,**

and

**R. Keith Higginson, Director of Water Administration, Idaho State Department of Water Administration, Intervenor-Respondent.**

No. 11370.

Supreme Court of Idaho.

June 27, 1974.

Walter Kiechel, Deputy Asst. Atty. Gen. of the U.S., and Paul L. Westborg, Boise, Asst. U.S. Atty., for intervenor-appellant U.S.

W. Anthony Park, Atty. Gen. of Idaho, and Nathan W. Higer, Asst. Atty. Gen., Boise, for intervenor-respondents.

BAKES, Justice.

In October, 1966, three Idaho irrigation districts brought an action to adjudicate water rights in Hayden Lake and its tributaries. Hayden Lake is located in Kootenai County, Idaho, and, but for a small part of its west end, is surrounded by the Coeur d'Alene National Forest. The national forest was reserved and set aside out of public lands of the United States by Presidential Proclamation in 1906. In November, 1968, the United States Government, intervenor-appellant, filed a "notice of claim of water right" based upon the Reservation Doctrine, stating:

> "The reserved right claimed by the United States is in amounts reasonably necessary and sufficient to carry out the limited purposes for which the forest service lands were reserved; namely timber management and production and related purposes, including fish and wildlife management, livestock grazing and recreational activities."

The district court appointed R. Keith Higginson, Director of the Idaho State Department of Water Administration, as a special master to ascertain and report upon

the number and validity of water right claims and to make recommendations to the court. In April, 1971, the special master issued his Findings of Fact, Conclusions of Law and Recommended Decree, in which he denied appellant's general theory of unquantified reserved water rights and granted all of appellant's quantified claims to water rights and granted an additional 0.20 cfs for future use at the Hells Canyon Campground.

On August 16, 1971, appellant filed its exceptions to those findings and conclusions of the master which, in effect, failed to recognize unquantified federal reserved water rights.

On August 30, 1972, the district court permitted the Idaho State Department of Water Administration to intervene to protest appellant's claim based upon the Reservation Doctrine. In a memorandum decision rendered on March 8, 1973, the district court concluded that appellant held reserved water rights with a priority of November 6, 1906, but insisted that such reserved rights must be quantified, and confirmed the master's fixed quantity limits. From that decision of the district court, appellant prosecutes this appeal.

The issue presented in this appeal is whether in a general adjudication of water rights in a state court, the United States must quantify its reserved water rights.

The existence of federal reserved water rights is apparently firmly established[1] and is not disputed by respondent in this appeal. As the doctrine has received extensive analysis and comment in legal publications[2] and governmental commission reports,[3] a dissertation here on the history and development of the doctrine is unnecessary.

An analysis of the case law relating to the reserved water rights doctrine fails to provide the answer to the question of whether or not federally reserved water rights must be quantified at the time of a general adjudication and that issue is one of several yet to be resolved.[4] In Arizona v. California, 373 U.S. 546, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963) (opinion), 376 U.S. 340, 84 S.Ct. 755, 11 L.Ed.2d 757 (1964) (degree), the United States Supreme Court affirmed the rulings of the special master wherein the master quantified the reserved water rights of several Indian reservations involved in the litigation. In doing so, the master specifically rejected a proposal that he issue a decree "stating that each reservation may divert at any particular time all the water reasonably necessary for its agricultural and related uses as against those who appropriated water subsequent to its establishment,"[5] and stated that in his opinion such an open-ended decree "would place all junior water rights in jeopardy of the uncertain and unknowable."[6] However, the master then proceeded to quantify only two of the four non-Indian federal reservations involved in the litigation, the Havasu Lake and the Imperial National Wildlife Refuges. With respect to the Lake Mead National Recreational Area and the Gila National Forest, the master adopted the same open-ended decree that he had condemned in his discussion of the quantities reserved for the Indian reservation. He apparently justified his inconsistency by his conclusion that the future claims of these reservations would be reviewed.

1. United States v. District Court, County of Eagle, Colorado, 401 U.S. 520, 91 S.Ct. 998, 28 L.Ed.2d 278 (1971).

2. 19 Stan.L.R. 1, at p. 65 (1967); 20 Stan. L.R. 1187 (1968); 50 Ore.L.R. 322 (1971); 15 Rocky Mtn.Min.Law Institute 399 (1969); 17 Rocky Mtn.Min.Law Institute 579 (1972); 1973 Utah L.R. 43 (1973); 6 Land & Water L.R. 89 (1970); 6 Land & Water L.R. 109 (1970); 6 Land & Water L.R. 117 (1970); to note a few.

3. National Water Commission, Federal State Relations in Water Law, Frank J. Trelease (Sept.1971); Public Land L.R. Commission, One Third of the Nation's Land, Report to the President (1970), at p. 141.

4. See 20 Stan.L.R. 1187, at 1189.

5. Report of the Special Master, pp. 263–264, 20 Stan.L.R. 1187, at 1190.

6. Report of the Special Master, p. 264, 20 Stan.L.R. 1187, at 1190.

In United States v. District Court, County of Eagle, Colorado, 401 U.S. 520, 91 S. Ct. 998, 28 L.Ed.2d 278 (1971), the Supreme Court affirmed a Colorado decree holding that 43 U.S.C. § 666, 66 Stat. 560,[7] (generally known as the McCarran Amendment), constituted consent to have the water rights of the United States adjudicated in a state court. In doing so, the court held that 43 U.S.C. § 666 was an all-inclusive statutory provision that subjects to general adjudication in state proceedings all water rights of the United States to water within a particular state's jurisdiction, regardless of how they were acquired. In so holding, the Supreme Court specifically held that reserved water rights were included within the purview of § 666.

Since reserved water rights are within the purview of the McCarran Amendment,[8] the resolution of the question before this Court necessarily involves an interpretation of congressional intent in enacting that amendment.

The following excerpts from Senate Report No. 755, 82d Congress, 1st Session, which accompanied the McCarran Amendment, shed some light on the intent of Congress in enacting the amendment. After a discussion of the history of and decisions relating to the law of water rights, the report stated:

"Accordingly all water users on a stream, in practically every case, are interested and necessary parties to any court proceedings. It is apparent that if any water user claiming to hold such right by reason of the ownership thereof by the United States or any of its de-partments is permitted to claim immunity from suit in, or orders of, a State court, such claims could materially interfere with the lawful and equitable use of water for beneficial use by the other water users who are amenable to and bound by the decrees and orders of the State courts. Unless Congress has removed such immunity by statutory enactment, the bar of immunity from suit still remains and any judgment or decree of the State court is ineffective as to the water right held by the United States. Congress has not removed the bar of immunity even in its own courts in suits wherein water rights acquired under State law are drawn in question. The bill (S. 18) was introduced for the very purpose of correcting this situation and the evils growing out of such immunity. "The committee believes that such a situation cannot help but result in a chaotic condition.

.    .    .    .    .    .

"Since it is clear that *the States have the control of the water within their boundaries, it is essential that each and every owner along a given water course, including the United States, must be amenable to the law of the State, if there is to be a proper administration of the water law as it has developed over the years.*

.    .    .    .    .    .

"The committee is of the opinion that there is *no valid reason why the United States should not be required to join in a proceeding when it is a necessary party and to be required to abide by the deci-*

7. 43 U.S.C. § 666 provides in pertinent part: "(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances: *Provided*, That no judgment for costs shall be entered against the United States in any such suit."

8. United States v. District Court, County of Eagle, Colorado, *supra*.

*sions of the Court in the same manner as if it were a private individual."* S. Rep. No. 755, 82d Cong., 1st Sess., 5, 6. (Emphasis added).

Further, Senator McCarran, Chairman of the committee reporting on the bill, in response to a letter from Senator Magnuson, stated:

"S. 18 is not intended to be used for the purpose of obstructing the project of which you speak or any similar project and it is not intended to be used for any other purpose than to allow the United States to be joined in a suit wherein it is necessary to adjudicate all of the rights of various owners on a given stream. This is so because unless all of the parties owning or in the process of acquiring water rights on a particular stream can be joined as parties defendant, any subsequent decree would be of little value." S.Rep. No. 755, 82d Cong., 1st Sess., 9.[9]

The position urged by the United States in this appeal would create just the situation that Congress sought to remedy, namely, the casting of doubt on the amount and validity of water rights. To say that the United States can be joined in a general water adjudication but not be required to state the nature and extent of their claim makes any adjudication flowing therefrom, at best, an exercise in uncertainty. There would always be the ominous cloud of the unknown extent of water claimed by the United States, which claim could preempt a state decreed water right without compensation. The United States argument that the amount which might be taken in the future is limited by that "amount reasonably necessary to carry out the limited purposes for which the forest reserve lands were reserved; namely timber management and production and related purposes, including fish and wildlife management, livestock grazing and recreational activities," provides little solace to the holder of a decreed water right whose water right might be taken by the United States at some unknown future time without compensation, and certainly exacerbates the element of uncertainty Congress sought to eliminate in enacting the McCarran Amendment. Witness the situation stated in 19 Stan.L.R. (1967) at p. 72:

"What are the reasonable needs of a national forest? If operated purely as a forest, the amount is very little. If operated as a sylvan playground, with golf courses, swimming pools, and lakes for fishing and boating, the amount begins to increase significantly. And perhaps the most unsettling thing to western water users is the uncertainty about what the Government will claim when today's simple forest might be tomorrow's North Shore of Lake Tahoe."

See also National Water Commission, Federal State Relations in Water Law, Frank J. Trelease (1970), wherein it is stated at p. 22:

"If the [Forest] Service were to assign its reserved right to a development like the proposed 'Mineral King' in the Sequoia National Forest, a $35,000,000 project planned to accommodate 8,000 skiers at one time and provide overnight accommodations for 3,300 people, a very substantial demand could take priority over rights in use for years. 'Who can say that Walt Disney Productions, Inc. on the National Forests is not the way of the future?'"

In view of the legislative history of 43 U.S.C. § 666, we cannot attribute to Congress the intent to enact a statute which, in an attempt to instill certainty into the water rights of the citizens of the various states, allows the United States to be joined in a general water adjudication but not be required to state with certainty the amount of water required. If such a result as is urged here by the United States is the law of the land, then the Supreme Court of the United States should declare it to be so in clear and unmistakable terms.

We hold that under 43 U.S.C. § 666, the United States is bound by Idaho state law, and therefore must quantify the amount of water claimed under the reservation doc-

---

9. This letter was also quoted in the United States v. District Court, County of Eagle, Colorado, *supra.*

trine at the time of the general adjudication of water rights.[10] The case is remanded for the purpose of allowing the United States to move to reopen the adjudication to quantify. If the United States so moves, a reasonable time must be allowed for them to quantify the rights claimed under the reservation doctrine. If there is no motion to reopen within thirty days after the remittitur issues herein, the judgment of the district court shall be in all respects final. Additionally, on remand, in order to avoid any question of bias, the district court must not appoint R. Keith Higginson, Director of the Idaho State Department of Water Administration, as special master in view of his participation in this appeal. *See* Jagow v. Child, 95 Idaho 830, 521 P.2d 654 (1974).

Remanded for further proceedings consistent with this opinion. No costs allowed.

SHEPARD, C. J., and DONALDSON, McQUADE and McFADDEN, JJ., concur.

---

10. I.C. 42–1409. Note that reserved rights, unlike state created appropriative rights, do not depend upon diversion from the stream and application to beneficial use. 19 Stan. L.R. 1, at p. 65 (1967); Arizona v. California, *supra*; National Water Commission Report, Federal State Relations in Water Law, *supra*, at p. 147j. Likewise, since the doctrine is based upon the supremacy clause, it supercedes Idaho law on speculative water rights, (*see* Lemmon v. Hardy, 95 Idaho 778, 519 P.2d 1168 (1974)) since some speculation is necessarily required in a present quantification of reserved water rights.