## ARIZONA *v.* CALIFORNIA ET AL.

No. 8, Original.  Decided June 3, 1963.—Decree entered
March 9, 1964.

IT IS ORDERED, ADJUDGED AND DECREED THAT

I. For purposes of this decree:

(A) "Consumptive use" means diversions from the stream less such return flow thereto as is available for consumptive use in the United States or in satisfaction of the Mexican Treaty obligation;

(B) "Mainstream" means the mainstream of the Colorado River downstream from Lee Ferry within the United States, including the reservoirs thereon;

(C) Consumptive use from the mainstream within a State shall include all consumptive uses of water of the mainstream, including water drawn from the mainstream by underground pumping, and including, but not limited to, consumptive uses made by persons, by agencies of that State, and by the United States for the benefit of Indian reservations and other federal establishments within the State;

(D) "Regulatory structures controlled by the United States" refers to Hoover Dam, Davis Dam, Parker Dam, Headgate Rock Dam, Palo Verde Dam, Imperial Dam, Laguna Dam and all other dams and works on the mainstream now or hereafter controlled or operated by the United States which regulate the flow of water in the mainstream or the diversion of water from the mainstream;

(E) "Water controlled by the United States" refers to the water in Lake Mead, Lake Mohave, Lake Havasu and all other water in the mainstream below Lee Ferry and within the United States;

(F) "Tributaries" means all stream systems the waters of which naturally drain into the mainstream of the Colorado River below Lee Ferry;

(G) "Perfected right" means a water right acquired in accordance with state law, which right has been exercised by the actual diversion of a specific quantity of water that has been applied to a defined area of land or to definite municipal or industrial works, and in addition shall include water rights created by the reservation of mainstream water for the use of federal establishments under federal law whether or not the water has been applied to beneficial use;

(H) "Present perfected rights" means perfected rights, as here defined, existing as of June 25, 1929, the effective date of the Boulder Canyon Project Act;

(I) "Domestic use" shall include the use of water for household, stock, municipal, mining, milling, industrial, and other like purposes, but shall exclude the generation of electrical power;

(J) "Annual" and "Year," except where the context may otherwise require, refer to calendar years;

(K) Consumptive use of water diverted in one State for consumptive use in another State shall be treated as if diverted in the State for whose benefit it is consumed.

II. The United States, its officers, attorneys, agents and employees be and they are hereby severally enjoined:

(A) From operating regulatory structures controlled by the United States and from releasing water controlled by the United States other than in accordance with the following order of priority:

(1) For river regulation, improvement of navigation, and flood control;

(2) For irrigation and domestic uses, including the satisfaction of present perfected rights; and

(3) For power;

Provided, however, that the United States may release water in satisfaction of its obligations to the United

States of Mexico under the Treaty dated February 3, 1944, without regard to the priorities specified in this subdivision (A);

(B) From releasing water controlled by the United States for irrigation and domestic use in the States of Arizona, California and Nevada, except as follows:

(1) If sufficient mainstream water is available for release, as determined by the Secretary of the Interior, to satisfy 7,500,000 acre-feet of annual consumptive use in the aforesaid three States, then of such 7,500,000 acre-feet of consumptive use, there shall be apportioned 2,800,000 acre-feet for use in Arizona, 4,400,000 acre-feet for use in California, and 300,000 acre-feet for use in Nevada;

(2) If sufficient mainstream water is available for release, as determined by the Secretary of the Interior, to satisfy annual consumptive use in the aforesaid States in excess of 7,500,000 acre-feet, such excess consumptive use is surplus, and 50% thereof shall be apportioned for use in Arizona and 50% for use in California; provided, however, that if the United States so contracts with Nevada, then 46% of such surplus shall be apportioned for use in Arizona and 4% for use in Nevada;

(3) If insufficient mainstream water is available for release, as determined by the Secretary of the Interior, to satisfy annual consumptive use of 7,500,000 acre-feet in the aforesaid three States, then the Secretary of the Interior, after providing for satisfaction of present perfected rights in the order of their priority dates without regard to state lines and after consultation with the parties to major delivery contracts and such representatives as the respective States may designate, may apportion the amount remaining available for consumptive use in such manner as is consistent with the Boulder Canyon Project Act as interpreted by the opinion of this Court herein, and with other applicable federal statutes, but in no event shall more than 4,400,000 acre-feet be

apportioned for use in California including all present perfected rights;

(4) Any mainstream water consumptively used within a State shall be charged to its apportionment, regardless of the purpose for which it was released;

(5) Notwithstanding the provisions of Paragraphs (1) through (4) of this subdivision (B), mainstream water shall be released or delivered to water users (including but not limited to public and municipal corporations and other public agencies) in Arizona, California, and Nevada only pursuant to valid contracts therefor made with such users by the Secretary of the Interior, pursuant to Section 5 of the Boulder Canyon Project Act or any other applicable federal statute;

(6) If, in any one year, water apportioned for consumptive use in a State will not be consumed in that State, whether for the reason that delivery contracts for the full amount of the State's apportionment are not in effect or that users cannot apply all of such water to beneficial uses, or for any other reason, nothing in this decree shall be construed as prohibiting the Secretary of the Interior from releasing such apportioned but unused water during such year for consumptive use in the other States. No rights to the recurrent use of such water shall accrue by reason of the use thereof;

(C) From applying the provisions of Article 7 (d) of the Arizona water delivery contract dated February 9, 1944, and the provisions of Article 5 (a) of the Nevada water delivery contract dated March 30, 1942, as amended by the contract dated January 3, 1944, to reduce the apportionment or delivery of mainstream water to users within the States of Arizona and Nevada by reason of any uses in such States from the tributaries flowing therein;

(D) From releasing water controlled by the United States for use in the States of Arizona, California, and Nevada for the benefit of any federal establishment

named in this subdivision (D) except in accordance with the allocations made herein; provided, however, that such release may be made notwithstanding the provisions of Paragraph (5) of subdivision (B) of this Article; and provided further that nothing herein shall prohibit the United States from making future additional reservations of mainstream water for use in any of such States as may be authorized by law and subject to present perfected rights and rights under contracts theretofore made with water users in such State under Section 5 of the Boulder Canyon Project Act or any other applicable federal statute:

(1) The Chemehuevi Indian Reservation in annual quantities not to exceed (i) 11,340 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 1,900 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of February 2, 1907;

(2) The Cocopah Indian Reservation in annual quantities not to exceed (i) 2,744 acre-feet of diversions from the mainstream or (ii), the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 431 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of September 27, 1917;

(3) The Yuma Indian Reservation in annual quantities not to exceed (i) 51,616 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 7,743 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with a priority date of January 9, 1884;

(4) The Colorado River Indian Reservation in annual quantities not to exceed (i) 717,148 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream

water necessary to supply the consumptive use required for irrigation of 107,588 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, with priority dates of March 3, 1865, for lands reserved by the Act of March 3, 1865 (13 Stat. 541, 559); November 22, 1873, for lands reserved by the Executive Order of said date; November 16, 1874, for lands reserved by the Executive Order of said date, except as later modified; May 15, 1876, for lands reserved by the Executive Order of said date; November 22, 1915, for lands reserved by the Executive Order of said date;

(5) The Fort Mohave Indian Reservation in annual quantities not to exceed (i) 122,648 acre-feet of diversions from the mainstream or (ii) the quantity of mainstream water necessary to supply the consumptive use required for irrigation of 18,974 acres and for the satisfaction of related uses, whichever of (i) or (ii) is less, and, subject to the next succeeding proviso, with priority dates of September 19, 1890, for lands transferred by the Executive Order of said date; February 2, 1911, for lands reserved by the Executive Order of said date; provided, however, that lands conveyed to the State of California pursuant to the Swamp Land Act [9 Stat. 519 (1850)] as well as any accretions thereto to which the owners of such land may be entitled, and lands patented to the Southern Pacific Railroad pursuant to the Act of July 27, 1866 (14 Stat. 292), shall not be included as irrigable acreage within the Reservation and that the above specified diversion requirement shall be reduced by 6.4 acre-feet per acre of such land that is irrigable; provided that the quantities fixed in this paragraph and paragraph (4) shall be subject to appropriate adjustment by agreement or decree of this Court in the event that the boundaries of the respective reservations are finally determined;

(6) The Lake Mead National Recreation Area in annual quantities reasonably necessary to fulfill the pur-

poses of the Recreation Area, with priority dates of May 3, 1929, for lands reserved by the Executive Order of said date (No. 5105), and April 25, 1930, for lands reserved by the Executive Order of said date (No. 5339);

(7) The Havasu Lake National Wildlife Refuge in annual quantities reasonably necessary to fulfill the purposes of the Refuge, not to exceed (i) 41,839 acre-feet of water diverted from the mainstream or (ii) 37,339 acre-feet of consumptive use of mainstream water, whichever of (i) or (ii) is less, with a priority date of January 22, 1941, for lands reserved by the Executive Order of said date (No. 8647), and a priority date of February 11, 1949, for land reserved by the Public Land Order of said date (No. 559);

(8) The Imperial National Wildlife Refuge in annual quantities reasonably necessary to fulfill the purposes of the Refuge not to exceed (i) 28,000 acre-feet of water diverted from the mainstream or (ii) 23,000 acre-feet of consumptive use of mainstream water, whichever of (i) or (ii) is less, with a priority date of February 14, 1941;

(9) Boulder City, Nevada, as authorized by the Act of September 2, 1958, 72 Stat. 1726, with a priority date of May 15, 1931;

Provided, further, that consumptive uses from the mainstream for the benefit of the above-named federal establishments shall, except as necessary to satisfy present perfected rights in the order of their priority dates without regard to state lines, be satisfied only out of water available, as provided in subdivision (B) of this Article, to each State wherein such uses occur and subject to, in the case of each reservation, such rights as have been created prior to the establishment of such reservation by contracts executed under Section 5 of the Boulder Canyon Project Act or any other applicable federal statute.

III. The States of Arizona, California and Nevada, Palo Verde Irrigation District, Imperial Irrigation District, Coachella Valley County Water District, Metro-

politan Water District of Southern California, City of Los Angeles, City of San Diego, and County of San Diego, and all other users of water from the mainstream in said States, their officers, attorneys, agents and employees, be and they are hereby severally enjoined:

(A) From interfering with the management and operation, in conformity with Article II of this decree, of regulatory structures controlled by the United States;

(B) From interfering with or purporting to authorize the interference with releases and deliveries, in conformity with Article II of this decree, of water controlled by the United States;

(C) From diverting or purporting to authorize the diversion of water from the mainstream the diversion of which has not been authorized by the United States for use in the respective States; provided, however, that no party named in this Article and no other user of water in said States shall divert or purport to authorize the diversion of water from the mainstream the diversion of which has not been authorized by the United States for its particular use;

(D) From consuming or purporting to authorize the consumptive use of water from the mainstream in excess of the quantities permitted under Article II of this decree.

IV. The State of New Mexico, its officers, attorneys, agents and employees, be and they are after four years from the date of this decree hereby severally enjoined:

(A) From diverting or permitting the diversion of water from San Simon Creek, its tributaries and underground water sources for the irrigation of more than a total of 2,900 acres during any one year, and from exceeding a total consumptive use of such water, for whatever purpose, of 72,000 acre-feet during any period of ten consecutive years; and from exceeding a total consumptive use of such water, for whatever purpose, of 8,220 acre-feet during any one year;

(B) From diverting or permitting the diversion of water from the San Francisco River, its tributaries and underground water sources for the irrigation within each of the following areas of more than the following number of acres during any one year:

Luna Area...................................... 225
Apache Creek-Aragon Area...................... 316
Reserve Area.................................. 725
Glenwood Area................................ 1,003

and from exceeding a total consumptive use of such water for whatever purpose, of 31,870 acre-feet during any period of ten consecutive years; and from exceeding a total consumptive use of such water, for whatever purpose, of 4,112 acre-feet during any one year;

(C) From diverting or permitting the diversion of water from the Gila River, its tributaries (exclusive of the San Francisco River and San Simon Creek and their tributaries) and underground water sources for the irrigation within each of the following areas of more than the following number of acres during any one year:

Upper Gila Area................................ 287
Cliff-Gila and Buckhorn-Duck Creek Area.......... 5,314
Red Rock Area................................ 1,456

and from exceeding a total consumptive use of such water (exclusive of uses in Virden Valley, New Mexico), for whatever purpose, of 136,620 acre-feet during any period of ten consecutive years; and from exceeding a total consumptive use of such water (exclusive of uses in Virden Valley, New Mexico), for whatever purpose, of 15,895 acre-feet during any one year;

(D) From diverting or permitting the diversion of water from the Gila River and its underground water sources in the Virden Valley, New Mexico, except for use on lands determined to have the right to the use of such water by the decree entered by the United States District Court for the District of Arizona on June 29, 1935, in

*United States* v. *Gila Valley Irrigation District et al.* (Globe Equity No. 59) (herein referred to as the Gila Decree), and except pursuant to and in accordance with the terms and provisions of the Gila Decree; provided, however, that:

(1) This decree shall not enjoin the use of underground water on any of the following lands:

| Owner | Subdivision and Legal Description | Sec. | Twp. | Rng. | Acreage |
|---|---|---|---|---|---|
| Marvin Arnett and J. C. O'Dell. | Part Lot 3 | 6 | 19S | 21W | 33.84 |
| | Part Lot 4 | 6 | 19S | 21W | 52.33 |
| | NW¼SW¼ | 5 | 19S | 21W | 38.36 |
| | SW¼SW¼ | 5 | 19S | 21W | 39.80 |
| | Part Lot 1 | 7 | 19S | 21W | 50.68 |
| | NW¼NW¼ | 8 | 19S | 21W | 38.03 |
| Hyrum M. Pace, Ray Richardson, Harry Day and N. O. Pace, Est. | SW¼NE¼ | 12 | 19S | 21W | 8.00 |
| | SW¼NE¼ | 12 | 19S | 21W | 15.00 |
| | SE¼NE¼ | 12 | 19S | 21W | 7.00 |
| C. C. Martin | S. part SE¼SW¼SE¼ | 1 | 19S | 21W | 0.93 |
| | W½W½W½NE¼NE¼ | 12 | 19S | 21W | 0.51 |
| | NW¼NE¼ | 12 | 19S | 21W | 18.01 |
| A. E. Jacobson | SW part Lot 1 | 6 | 19S | 21W | 11.58 |
| W. LeRoss Jones | E. Central part: E½E½E½ NW¼NW¼. | 12 | 19S | 21W | 0.70 |
| | SW part NE¼NW¼ | 12 | 19S | 21W | 8.93 |
| | N. Central part: N½N½N½NW¼ SE¼NW¼. | 12 | 19S | 21W | 0.51 |
| Conrad and James R. Donaldson. | N½N½N½SE¼ | 18 | 19S | 20W | 8.00 |
| James D. Freestone | Part W½NW¼ | 33 | 18S | 21W | 7.79 |
| Virgil W. Jones | N½SE¼NW¼; SE¼NE¼ NW¼. | 12 | 19S | 21W | 7.40 |
| Darrell Brooks | SE¼SW¼ | 32 | 18S | 21W | 6.15 |
| Floyd Jones | Part N½SE¼NE¼ | 13 | 19S | 21W | 4.00 |
| | Part NW¼SW¼NW¼ | 18 | 19S | 20W | 1.70 |
| L. M. Hatch | SW¼SW¼ | 32 | 18S | 21W | 4.40 |
| | Virden Townsite | | | | 3.90 |
| Carl M. Donaldson | SW¼SE¼ | 12 | 19S | 21W | 3.40 |
| Mack Johnson | Part NW¼NW¼NE¼ | 10 | 19S | 21W | 2.80 |
| | Part NE¼NW¼NE¼ | 10 | 19S | 21W | 0.30 |
| | Part N½N½S½NW¼NE¼ | 10 | 19S | 21W | 0.10 |
| Chris Dotz | SE¼SE¼; SW¼SE¼ | 3 | 19S | 21W | } 2.66 |
| | NW¼NE¼; NE¼NE¼ | 10 | 19S | 21W | |
| Roy A. Johnson | NE¼SE¼SE¼ | 4 | 19S | 21W | 1.00 |
| Ivan and Antone Thygerson | NE¼SE¼SE¼ | 32 | 18S | 21W | 1.00 |
| John W. Bonine | SW¼SE¼SW¼ | 34 | 18S | 21W | 1.00 |
| Marion K. Mortenson | SW¼SW¼SE¼ | 33 | 18S | 21W | 1.00 |
| Total | | | | | 380.81 |

or on lands or for other uses in the Virden Valley to which such use may be transferred or substituted on retirement from irrigation of any of said specifically described lands, up to a maximum total consumptive use of such water of 838.2 acre-feet per annum, unless and until such uses are adjudged by a court of competent jurisdiction to be an infringement or impairment of rights confirmed by the Gila Decree; and

(2) This decree shall not prohibit domestic use of water from the Gila River and its underground water sources on lands with rights confirmed by the Gila Decree, or on farmsteads located adjacent to said lands, or in the Virden Townsite, up to a total consumptive use of 265 acre-feet per annum in addition to the uses confirmed by the Gila Decree, unless and until such use is adjudged by a court of competent jurisdiction to be an infringement or impairment of rights confirmed by the Gila Decree;

(E) Provided, however, that nothing in this Article IV shall be construed to affect rights as between individual water users in the State of New Mexico; nor shall anything in this Article be construed to affect possible superior rights of the United States asserted on behalf of National Forests, Parks, Memorials, Monuments and lands administered by the Bureau of Land Management; and provided further that in addition to the diversions authorized herein the United States has the right to divert water from the mainstream of the Gila and San Francisco Rivers in quantities reasonably necessary to fulfill the purposes of the Gila National Forest with priority dates as of the date of withdrawal for forest purposes of each area of the forest within which the water is used;

(F) Provided, further, that no diversion from a stream authorized in Article IV (A) through (D) may be transferred to any of the other streams, nor may any use for irrigation purposes within any area on one of the streams be transferred for use for irrigation purposes to any other area on that stream.

V. The United States shall prepare and maintain, or provide for the preparation and maintenance of, and shall make available, annually and at such shorter intervals as the Secretary of the Interior shall deem necessary or advisable, for inspection by interested persons at all reasonable times and at a reasonable place or places, complete, detailed and accurate records of:

(A) Releases of water through regulatory structures controlled by the United States;

(B) Diversions of water from the mainstream, return flow of such water to the stream as is available for consumptive use in the United States or in satisfaction of the Mexican Treaty obligation, and consumptive use of such water. These quantities shall be stated separately as to each diverter from the mainstream, each point of diversion, and each of the States of Arizona, California and Nevada;

.(C) Releases of mainstream water pursuant to orders therefor but not diverted by the party ordering the same, and the quantity of such water delivered to Mexico in satisfaction of the Mexican Treaty or diverted·by others in satisfaction of rights decreed herein. These quantities shall be stated separately as to each diverter from the mainstream, each point of diversion, and each of the States of Arizona, California and Nevada;

(D) Deliveries to Mexico of water in satisfaction of the obligations of Part III of the Treaty of February 3, 1944, and, separately stated, water passing to Mexico in excess of treaty requirements;

(E) Diversions of water from the mainstream of the Gila and San Francisco Rivers and the consumptive use of such water, for the benefit of the Gila National Forest.

VI. Within two years from the date of this decree, the States of Arizona, California, and Nevada shall furnish to this Court and to the Secretary of the Interior a list of the present perfected rights, with their claimed priority dates, in waters of the mainstream within each State,

respectively, in terms of consumptive use, except those relating to federal establishments. Any named party to this proceeding may present its claim of present perfected rights or its opposition to the claims of others. The Secretary of the Interior shall supply similar information, within a similar period of time, with respect to the claims of the United States to present perfected rights within each State. If the parties and the Secretary of the Interior are unable at that time to agree on the present perfected rights to the use of mainstream water in each State, and their priority dates, any party may apply to the Court for the determination of such rights by the Court.

VII. The State of New Mexico shall, within four years from the date of this decree, prepare and maintain, or provide for the preparation and maintenance of, and shall annually thereafter make available for inspection at all reasonable times and at a reasonable place or places, complete, detailed and accurate records of:

(A) The acreages of all lands in New Mexico irrigated each year from the Gila River, the San Francisco River, San Simon Creek, and their tributaries and all of their underground water sources, stated by legal description and component acreages and separately as to each of the areas designated in Article IV of this decree and as to each of the three streams;

(B) Annual diversions and consumptive uses of water in New Mexico, from the Gila River, the San Francisco River, San Simon Creek, and their tributaries and all their underground water sources, stated separately as to each of the three streams.

VIII. This decree shall not affect:

(A) The relative rights *inter sese* of water users within any one of the States, except as otherwise specifically provided herein;

(B) The rights or priorities to water in any of the Lower Basin tributaries of the Colorado River in the States of Arizona, California, Nevada, New Mexico and Utah except the Gila River System;

(C) The rights or priorities, except as specific provision is made herein, of any Indian Reservation, National Forest, Park, Recreation Area, Monument or Memorial, or other lands of the United States;

(D) Any issue of interpretation of the Colorado River Compact.

IX. Any of the parties may apply at the foot of this decree for its amendment or for further relief. The Court retains jurisdiction of this suit for the purpose of any order, direction, or modification of the decree, or any supplementary decree, that may at any time be deemed proper in relation to the subject matter in controversy.

MR. JUSTICE DOUGLAS dissents.

MR. JUSTICE HARLAN and MR. JUSTICE STEWART dissent to the extent that the decree conflicts with the views expressed in the dissenting opinion of MR. JUSTICE HARLAN, 373 U. S. 546, 603.

THE CHIEF JUSTICE took no part in the consideration or decision of this case.