The METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA, a public agency of the State of California and the Coachella Valley Water District, a public agency of the State of California, Plaintiffs,

v.

The UNITED STATES of America, James Watt, Secretary, United States Department of the Interior, State of Arizona, State of California, Defendants,

Quechan Indian Tribe, Colorado River Indian Tribes, Fort Mojave Indian Tribe, Intervenors.

Civ. No. 81–0678–B.

United States District Court, S.D. California.

Feb. 25, 1986.

Warren J. Abbott, Karen L. Tachiki, James F. Roberts, Los Angeles, Cal., for plaintiff Metropolitan Water Dist.

F. Patrick Barry, U.S. Dept. of Justice, Washington, D.C., for defendants U.S. and James Watt.

Dale T. White, Fredericks & Pelcyger, Boulder, Colo., for intervenor Fort Mojave Tribe.

Douglas Noble, Deputy Atty. Gen., Los Angeles, Cal., for defendant State of Cal.

Scott B. McElroy, Native American Rights Fund, Boulder, Colo., for intervenor Colorado River Indian Tribes.

William Strickland, Strickland & Altaffer, Tucson, Ariz., for intervenor Quechan Indian Tribe.

## OPINION AND ORDER

BREWSTER, District Judge.

### I. BACKGROUND

This litigation arises out of disputes concerning the boundaries of the Fort Yuma

Indian Reservation, the Colorado River Indian Reservation, and the Fort Mojave Indian Reservation. Determination of the boundaries will affect the relative allocations of Colorado River water to the three intervenor Indian tribes and to other users in the States of California and Arizona, including plaintiffs herein. Pursuant to stipulation of the parties, the Court presently is concerned only with the boundaries of the Hay and Wood Reserve of the Fort Mojave Reservation (hereinafter "the Reserve").

The Reserve portion of the Fort Mojave Reservation was initially surveyed by Lieutenant George Wheeler in 1869 as an addition to the Camp Mojave military fort.[1] The legal description of the Reserve was prepared and adopted by Executive Order in 1870. By an 1890 Executive Order, Camp Mojave and the Hay and Wood Reserve were transferred to the Department of Interior to be held in trust as a reservation for the Fort Mojave Tribe (hereinafter "FMT"). The 1890 Executive Order adopted the 1870 legal description of the Reserve.

After the transfer of these military lands to the Fort Mojave Tribe, a contradiction in the 1870 legal description was discovered. The courses and distances set forth in the description delineate an area containing 9,114.81 acres, although the description places the post marking the western boundary of the Reserve on the left, or east, bank of the Colorado River. Subsequent surveys have shown that if the posts were located on the east bank of the river as it flowed in 1870, the Reserve would contain approximately 5,600 acres, some 3,500 acres less than the acreage contained in the 1870 legal description. To contain 9,114 acres, the western corners would have to be located on the foothills approximately

one and one-half miles west of the Colorado River.

Plaintiff Metropolitan Water District of Southern California (hereinafter "MWD") is a California public corporation engaged in the development, storage, and delivery of water to its member public agencies for municipal and domestic use. A major portion of MWD's water supply is obtained pursuant to 1930 and 1931 "permanent service" contracts with the Secretary of Interior for the receipt of Colorado River water. The contracts were made in accordance with section five of the Boulder Canyon Project Act of 1928, 43 U.S.C. § 617(d). Under the contracts, MWD's entitlement to Colorado River water is subject to satisfaction of the entitlements of those holding higher priorities. The contracts give MWD fourth and fifth priority rights, respectively, to the receipt of 550,000 and 662,000 acre feet of water annually.

In *Arizona v. California,* 373 U.S. 546, 600, 83 S.Ct. 1468, 1497–98, 10 L.Ed.2d 542 (1963), the Supreme Court held that the Indian reservations, including the Fort Mojave reservation, had rights to Colorado River water effective as of the time of the creation of the reservations. Thus, MWD's water entitlement is subordinate to the rights of FMT. Because the Colorado River and Fort Yuma reservations were also created before MWD contracted for the receipt of Colorado River water, MWD's entitlement is also subordinate to the water rights of those reservations. The Supreme Court also held in its 1963 decision that a tribe's entitlement is based on the "practicably irrigable acreage" on its reservation. *Id.* at 600–01. Thus, it is obvious that the water rights of MWD are affected by the determination of the practicably irrigable acres on the three reservations.

In the proceedings leading to the Supreme Court's 1963 decision in *Arizona v.*

1. Lieutenant Wheeler was acting under Special Orders No. 222 dated December 15, 1868, which ordered him, *inter alia,* as follows:

The amount, location, and boundaries of these reservations will be determined by the Post Commander, after consultation with Lieutenant Wheeler, the amount of land not

to exceed three miles square for the station, and not to exceed the same additional amount for all other purposes....

The court takes judicial notice of the fact that three miles square, or nine square miles, comprises approximately 5,760 acres.

*California,* Special Master Simon Rifkind, appointed by the Supreme Court, took testimony concerning the disputed boundaries of the Reserve. Special Master Rifkind's recommendations to the Supreme Court generally found in favor of the California parties and contrary to the larger boundary area advocated by FMT and the United States. However, the Supreme Court concluded that there was no necessity to make a boundary determination at that time. *Id.* at 601, 83 S.Ct. at 1498. Article II(D)(5) of the Court's 1964 Decree nevertheless fixed FMT's allocation of Colorado River water according to the recommendations of the Special Master, but provided that "the quantities fixed in this paragraph ... shall be subject to appropriate adjustment by agreement or decree of this Court in the event that the boundaries of the respective reservations are finally determined...." *Arizona v. California,* 376 U.S. 340, 345, 84 S.Ct. 755, 758, 11 L.Ed.2d 757 (1964).

On June 3, 1974, the Secretary of Interior ordered the Reserve to be resurveyed to include 9,114.81 acres, the larger boundary area advocated by FMT and the United States before Special Master Rifkind in 1963 (hereinafter the June 1974 order). The June 1974 order had the effect of adding approximately 3,500 acres to the area of the Reserve beyond the area established by the last Department of Interior survey in 1928. The Secretary rejected the portion of the 1870 legal description of the Reserve that marked the western boundary by reference to posts located near the left (east) bank of the Colorado River. He ordered that the western boundary be reestablished to conform to the acreage description of 9,114.81 acres. The June 1974 order was based upon an in-house investigation conducted by the Department of Interior's legal staff. MWD was not afforded the opportunity to participate, either by way of comment or hearing, in the investigation.

In 1978, the United States and FMT moved the Supreme Court to increase the tribe's water allocation based on the Secretary's June 1974 order. Special Master Elbert Tuttle agreed with the United States

and FMT that the Secretary of the Interior had "finally determined" the reservation's boundaries within the meaning of Article II(D)(5) of the Court's 1964 Decree. He recommended that the Court award FMT increased water rights commensurate with the increased practicably irrigable acreage.

The Supreme Court rejected this recommendation, stating:

> In our 1963 opinion, when we set aside Master Rifkind's boundary determinations as unnecessary and referred to possible future final settlement, we in no way intended that *ex parte* secretarial determinations of the boundary issues would constitute "final determinations" that could adversely affect the States, their agencies, or private water users holding priority rights.

*Arizona v. California,* 460 U.S. 605, 636, 103 S.Ct. 1382, 1400, 75 L.Ed.2d 318 (1983). The Court added, however, "we now intimate nothing as to the Secretary's power or authority to take the actions that he did or as to the soundness of his determinations on the merits". *Id.* at 637, 103 S.Ct. at 1400–01. The Court then made reference to the instant litigation, which had been instituted by MWD and the Coachella Valley Water District in July 1981 as follows:

> It is clear enough to us, and it should have been clear enough to others, that our 1963 opinion and 1964 decree anticipated that, if at all possible, the boundary dispute would be settled in other forums. At this juncture, we are unconvinced that the United States District Court for the Southern District of California, in which the challenge to the Secretary's actions has been filed, is not an available and suitable forum to settle these disputes.

*Id.* at 638, 103 S.Ct. at 1401.

In this action, plaintiffs request this court to void the June 1974 order and other orders by the Secretary of Interior purporting to finally determine the boundaries of the Fort Yuma, Fort Mojave, and Colorado River reservations. The plaintiffs also

seek a declaration of the location of the boundaries different from those fixed by the Secretary's orders. Since the tribes' water rights have priority over plaintiffs' rights, any increases in the tribal allocations · will diminish the quantity of water MWD may divert in any year in which the State of California is restricted to 4.4 million acre-feet of water or less.

Before the court now, therefore, are the following motions: (1) defendant the United States seeks summary judgment affirming the June 1974 Interior Department order; (2) plaintiff MWD brings a cross motion for summary judgment, asking the court to find the June 1974 order void and to declare that the western boundary of the Reserve is the left (east) bank of the Colorado River in its last natural course—defendant California has submitted a statement in support of MWD's summary judgment motion; (3) intervenor FMT seeks partial summary judgment affirming the June 1974 order; and (4) the United States and FMT move to strike certain documents and affidavits submitted by MWD and California as outside the administrative record.

## II.  SCOPE OF REVIEW

The first issue presented by these motions is the scope of review of the Secretary's June 1974 order.[2] This requires the court initially to determine whether there was statutory authority for the Secretary's action.

### A.  *Secretary's Authority to Issue the June 1974 Order.*

The Secretary of Interior asserts authority to order the resurvey of the Hay and Wood Reserve under 43 U.S.C. § 772. That statute provides:

The Secretary of the Interior may, in his discretion, cause to be made, as he may

deem wise under the rectangular system now provided by law, such resurveys or retracements of the surveys of public lands as, after full investigation, he may deem essential to properly mark the boundaries of the public lands remaining undisposed of: *Provided,* That no such resurvey or retracement shall be so executed as to impair the bona fide rights or claims of any claimant, entryman, or owner of lands affected by such resurvey or retracement. (emphasis in original)

MWD contends that the proviso to this section deprived the Secretary of authority to order the resurvey of the Reserve, since MWD is a "claimant" whose contractual right to the allocation of Colorado River water is adversely affected by the addition of more practicably irrigable acreage to the Reserve. The United States and FMT argue that the proviso only protects rights to the possession of land within the area to be resurveyed.

The language of the proviso suggests it was meant to have a broad sweep. It prohibits the Secretary from executing a resurvey in a way that would impair the bona fide rights of *any claimant* affected by such resurvey, not just the rights of owners of land. The words "any claimant" indicate to the court that Congress intended to protect the entire spectrum of rights of claimants that might be affected by a land resurvey. The court holds that spectrum of rights to include water rights that are affected by the acreage of lands to be resurveyed.[3]

Furthermore, as discussed below, accepting the interpretation advocated by the United States and FMT would raise a serious question whether section 772, as applied to this situation, comports with due process. The statute vests the Secretary with broad discretion to order resurveys,

---

**2.** The court does not interpret the Supreme Court's holding in the 1983 *Arizona v. California* decision, that the June 1974 order was not a "final determination" within the meaning of the 1964 Decree, to require this court to make a *de novo* determination. Instead, the court reads the Supreme Court's *caveat* that "we ... intimate nothing as to the Secretary's power or

authority to take the actions that he did", 460 U.S. at 637, 103 S.Ct. at 1400, to allow this court independently to determine whether the Secretary had authority to issue his June 1974 order.

**3.** The sparse legislative history on the proviso sheds little, if any, light on its interpretation.

without requiring that potentially aggrieved parties be allowed to participate in the decision-making process.[4] Ambiguous statutes should, if possible, be construed to avoid a constitutional question. *See, e.g., Energy Reserves Group, Inc. v. Kansas Power Light Co.,* 459 U.S. 400, 410 n. 10, 103 S.Ct. 697, 703 n. 10, 74 L.Ed.2d 569 (1983). Thus, this court reads the word claimant broadly to avoid interpreting section 772 to allow the Secretary to affect property interests without providing due process to affected interests.

█ The court concludes that, by virtue of the fact that MWD's water rights are affected by changes in the allocations to tribes holding superior water rights, MWD is a claimant to water rights in the Colorado River and is affected by the June 1974 order to resurvey the Reserve. The Secretary thus lacked authority to issue the June 1974 order, and the order must be set aside pursuant to 5 U.S.C. § 706(2)(C) (reviewing court shall set aside agency action found to be in excess of statutory authority). Since the Secretary lacks authority to relocate the instant boundaries, this court must make a *de novo* determination of the proper location of the boundary.

### B. *Procedural Due Process.*

Even if the Secretary possessed authority under section 772 to issue the June 1974 order, the court is also charged by 5 U.S.C. § 706(2)(D) to set aside agency action taken without observance of the procedures re-

quired by law, including the requirements of the due process clause of the fifth amendment.[5]

The first step in a procedural due process analysis is to determine whether a liberty or property interest is at stake.[6] *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972).

To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead have a legitimate claim or entitlement to it.

*Id.* at 577, 92 S.Ct. at 2709. MWD contends that its 1930 contract and its 1931 supplemental contract with the Secretary of Interior for the receipt of Colorado River water in perpetuity created a property interest for due process purposes.

FMT argues that the contracts do not create a property interest because they recite that the United States is not obligated to deliver water when delivery would interfere with the entitlement of those with priority rights, such as FMT. Assuming FMT's interpretation of the contracts is correct, the contracts nevertheless cannot be reasonably interpreted to vest the Secretary of Interior with unilateral authority to enlarge the allocations to those with priority rights. The contracts do not put MWD on notice that, by *ex parte* application of priority users, the United States could per-

---

**4.** This court concludes below that MWD's water rights are property interests protected by the due process clause.

**5.** 5 U.S.C. § 706 provides in relevant part as follows:

The reviewing court shall—

. . . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

. . . . .

(D) without observance of procedure required by law.

**6.** The United States and FMT raise a threshold argument that the Metropolitan Water District, as a public entity created by the State of California, is not a "person" protected by the fifth

amendment. Although the Supreme Court has stated, without explanatory analysis, that the "States of the Union" cannot be considered "persons" under the fifth amendment, *South Carolina v. Katzenbach,* 383 U.S. 301, 323–24, 86 S.Ct. 803, 815–16, 15 L.Ed.2d 769 (1966), it is doubtful that this conclusion applies to state-created public corporations such as MWD. It is well established that corporations are persons within the meaning of the constitutional provisions forbidding the deprivation of property without due process of law. *Covington and Lexington Turnpike Road Co. v. Sandford,* 164 U.S. 578, 592, 17 S.Ct. 198, 203, 41 L.Ed. 560 (1896); *See First National Bank of Boston v. Bellotti,* 435 U.S. 765, 780 n. 15, 98 S.Ct. 1407, 1418 n. 15, 55 L.Ed.2d 707 (1978). The court concludes that MWD is protected by the due process clause.

manently diminish the value of MWD's contractual allocation.

■ The 1930 contract, as supplemented by the 1931 contract, provides that MWD has a fourth priority right to the receipt of 550,000 acre feet of water annually and a fifth priority right to 662,000 acre feet annually. The amounts of water to be diverted to the holders of higher contractual priorities are also set forth in the contracts. The 1930 contract states that it is for "permanent service". The court must conclude that the contracts vest MWD with a legitimate claim of entitlement to the receipt of Colorado River water according to the priorities listed on these contracts, and that this claim is a property right cognizable by the fifth amendment.

The conclusion that MWD has a property interest in its contractual allocation is supported by language from the Supreme Court's 1983 *Arizona v. California* decision. Responding to the dissent's contention that the tribes should be awarded an immediate increase in their water rights based on the *ex parte* secretarial orders, the majority noted that "[t]he dissent's reasoning would also deprive the States, albeit on a 'conditional basis,' ... of valuable water rights now vested in them, without affording them the slightest semblance of a fair hearing on their claims. Cf. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (invalidating a procedure allowing prejudgment taking of property without notice or hearing)." 460 U.S. 605, 639 n. 28, 103 S.Ct. 1382, 1401 n. 28, 75 L.Ed.2d 318 (1983). Implicit in this statement and the citation of *Fuentes* is the conclusion that the states had a property interest in the receipt of Colorado River water. If so, then so also does MWD, by virtue of its 1930 and 1931 contracts.

■ The second step in the procedural due process inquiry is to determine whether the Secretary's procedures comported with due process. Due process requires, at a minimum, notice and an opportunity to be heard. *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975). MWD did not receive notice of the investi-

gation preceding the June 1974 order, nor was it afforded an opportunity to express its views either in writing or by way of evidentiary hearing at any point in the decision-making process. The Secretary's *ex parte* review fell far short of the procedures required by due process. Pursuant to 5 U.S.C. § 706(2)(D), the court, therefore, voids the June 1974 order.

Under this alternative ground for invalidating the June 1974 order, the court is authorized to make a *de novo* determination of the boundaries of the Reserve. In *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), the Supreme Court held that "*de novo* review is authorized when the action is adjudicatory in nature, and the agency fact-finding procedures are inadequate". *See Camp v. Pitts*, 411 U.S. 138, 141–42, 93 S.Ct. 1241, 1243–44, 36 L.Ed.2d 106 (1973); *Porter v. Califano*, 592 F.2d 770, 782–84 (5th Cir.1979) (ordering *de novo* review where agency's fact-finding held to be biased).

The *Overton Park* requirements are met in this case. First, the boundary determination was adjudicatory in nature. En route to the June 1974 order, the Secretary made a factual finding regarding the intent of Lieutenant George Wheeler when he surveyed the Reserve. This finding of fact in turn was based on subsidiary factual findings regarding Wheeler's surveying methods and procedures. The Secretary's order falls in the broad category of agency action characterized as informal adjudication. *See City of West Chicago v. United States Nuclear Regulatory Commission*, 701 F.2d 632, 644 (7th Cir.1983) and authorities cited therein. Second, the court has already found that the procedures used to resolve these factual questions were inadequate because they failed to comport with minimum standards of due process.

To summarize, the court concludes that it should make a *de novo* determination of the boundaries of the Reserve based on two alternative grounds: (1) the June 1974 order exceeded the Secretary's statutory authority; and (2) the fact-finding proce-

dures used to adjudicate the boundary did not comport with due process. The court notes that this conclusion is buttressed by its concern for both the appearance and reality of objectivity in decision-making. The appearance of objectivity is not furthered when the Secretary of Interior acts as the arbiter of boundary disputes whose resolution has a massive impact on rights to Colorado River water and, at the same time, serves as trustee for three of the Indian tribes which have a significant stake in the outcome. *Cf. Porter v. Califano*, 592 F.2d at 782–84. The need for the appearance of objectivity favors *de novo* determination by this court.

Having determined that *de novo* review is proper, the court finds it appropriate to consider all evidence presented by the parties, including evidence not made a part of the administrative record. Accordingly, the motions to strike by the United States and FMT should be denied.

### III. THE MOTIONS

In addition to conducting a lengthy oral hearing, the court has thoroughly reviewed the evidence submitted by all parties regarding the boundaries of the Reserve, including the Administrative Record, the appendix documents submitted by MWD, and the affidavits submitted by MWD and the State of California. The court concludes that there are genuine issues of material fact in dispute.

■ The dispute concerning the boundaries of the Reserve arises from the contradiction in the Reserve's 1870 legal description, as discussed above. The parties are in basic agreement on the legal ground rules for resolving this contradiction. Generally, calls to monuments (such as the banks of a river) should prevail over calls to courses and distances. *See, e.g., United States v. State Investment Co.*, 264 U.S. 206, 211, 44 S.Ct. 289, 290, 68 L.Ed. 639 (1924). An exception to this rule, however, is that it should not be adhered to when to do so would defeat the intent of the grantor. *See, e.g., Bartlett Land & Lumber Co. v. Saunders*, 13 Otto 316, 103 U.S. 316,

322, 26 L.Ed. 546 (1881). Thus, the court must determine the intent of the grantor of the Reserve, if possible to ascertain.

■ The court finds that there is a lively dispute as to the boundaries and acreage intended by the United States when it established the Reserve. As a guide to the parties, the court notes that it is not as convinced as the parties appear to be that the boundaries actually surveyed by Lieutenant Wheeler are determinative of the intent of the grantor. In later proceedings, the parties should be prepared to address whose intent constitutes the intent of the grantor. For instance, the intent of those giving instructions to Wheeler may be more probative of the intent of the grantor than Wheeler's intent. In any event, the conflicting evidence regarding the intent of the grantor precludes summary judgment at this point. The court believes that a trial will be necessary to resolve this factual dispute.

The parties will be contacted shortly for the purpose of arranging a status conference at which a discovery schedule and a trial date will be established.

### ORDER

Based on the above opinion, IT IS HEREBY ORDERED THAT:

(1) The Secretary's June 1974 order is void. To this extent, MWD's motion for summary judgment on the second claim for relief in the second amended complaint is GRANTED IN PART.

(2) In all other respects, MWD's motion for summary judgment is DENIED.

(3) The motions for summary judgment by the United States and the Fort Mojave Tribe are DENIED.

(4) The motions of the United States and FMT to strike affidavits and appendix documents are DENIED.