**MOHAVE VALLEY IRRIGATION & DRAINAGE DISTRICT, Plaintiff–Appellant,**

v.

**Gale A. NORTON, Secretary of Interior, Defendant–Appellee.**

No. 99–16927.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 2001

Filed April 11, 2001

Terrence S. Leek, Prescott, Arizona, for the plaintiff-appellant.

Jeffrey C. Dobbins, U.S. Department of Justice, Washington, D.C., for the defendant-appellee.

Before: SCHROEDER, Chief Judge, WALLACE, and TALLMAN, Circuit Judges.

SCHROEDER, Chief Judge:

The Mohave Valley Irrigation and Drainage District ("District"), located in western Arizona, appeals the district court's grant of summary judgment to Gale Norton, in her capacity as Secretary of the Interior ("Interior"). The District alleges that Interior breached a 1968 contract entitling the District to 41,000 acre feet of water annually from the Colorado River system. The District and Interior differ on whether that entitlement encompasses water delivered to landowners in the District who hold present perfected rights ("PPRs") to Colorado River water.

The Supreme Court has defined PPRs as those rights to water from the Colorado River system existing as of June 25, 1929, acquired under state law and having been put to beneficial use, as well as all rights created under federal law. It defined the scope of such rights as follows:

> [Any water right] acquired in accordance with state law, which right has been exercised by the actual diversion of a specific quantity of water that has been applied to a defined area of land or to definite municipal or industrial works ... [as well as] rights created by the reservation of mainstream water for the use of federal establishments under federal law whether or not the water has been applied to beneficial use.

*Arizona v. California,* 376 U.S. 340, 341, 84 S.Ct. 755, 11 L.Ed.2d 757 (1964). Pursuant to 43 U.S.C. § 617e, the Department of Interior is obligated to use water from the Colorado River system to supply holders of present perfected rights. *See Bryant v. Yellen,* 447 U.S. 352, 364–65, 100 S.Ct. 2232, 65 L.Ed.2d 184 (1980)(recognizing that present perfected rights constitute a limitation on Interior's power to distribute water from the Colorado River).

The District entered into a contract in 1968 to establish its limited entitlement to water from the lower Colorado River, its related reclamation projects, and wells fed by the River's groundwater and Interior's projects. The contract establishes the District's annual allotment of water (currently set at 41,000 acre feet) and provides specific procedures through which the entitlement can be adjusted every ten years. The contract does not explicitly mention the impact of water deliveries to holders of PPRs located within the District's boundaries.

Interior maintains it fulfills its responsibility if it calculates the District's allotment by subtracting water provided to holders of PPRs located within the District from the amount fixed by the contract. The district court agreed with Interior. It found that the allotment of water in the contract encompasses all the water delivered to the District, even if some of that water goes to landowners who hold PPRs. The District appeals, contending that the contract is ambiguous and that a trial is necessary to establish its entitlement to the full water allotment under the contract, in addition to the water delivered to holders of PPRs.

Federal law governs the interpretation of contracts where the United States is a party. *O'Neill v. United States,* 50 F.3d 677, 682 (9th Cir.1995). This Court has consistently applied federal law to interpret reclamation contracts. *See, e.g., Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1210 (9th Cir.1999); *Kennewick Irrigation Dist. v. United States,* 880 F.2d 1018, 1032 (9th Cir.1989). We interpret the 1968 contract between the District and Interior by considering whether a reasonable person would find the contract's terms to be am-

biguous. *Castaneda v. Dura–Vent Corp.*, 648 F.2d 612, 619 (9th Cir.1981). On its face, the contract language supports Interior's interpretation. The contract broadly defines the District as follows:

> that area of land in Mohave County, formally included within the Mohave Valley Irrigation and Drainage District ... [except] those lands that are within the external boundaries of the District but which have been excluded from the District pursuant to resolution or any order of a court of proper jurisdiction....

There is no judicial decision excluding the areas belonging to holders of PPRs from the scope of the definition of water delivered to the District, nor does the contract language itself make any exceptions for holders of PPRs. Moreover, "water delivered" is defined in the contract as:

> all water pumped by the District or by any other person, firm, or Corporation, from wells located within or outside the District for use within the District or from wells located within the District for use outside the District ...

The breadth of the definitions of "water delivered" and "District" lends support to the view that the contract's allocation of water makes no exception for water delivered to PPR holders.

The District makes much of the fact that the contract does not mention PPRs, but the omission does not help its cause. PPRs had already been recognized by the Supreme Court well before the parties entered into the contract. *See Arizona*, 376 U.S. at 341, 84 S.Ct. 755. If the parties intended to exclude water received by holders of PPRs, the contract would not have defined the waters included in the allocation so expansively.

The District contends there is extrinsic evidence that supports its position. We look to the Uniform Commercial Code ("UCC") to decide whether we can consider extrinsic evidence to determine whether a contract, clear on its face, is actually ambiguous. *O'Neill*, 50 F.3d at 683–84. According to the UCC, to determine whether a contract's terms are ambiguous, courts may only consider evidence of course of dealing, trade usage, or course of performance. UCC § 2–202.

The District first points to Interior's handling of the first individual contract with a PPR holder (the Hurschler family) located within the District's territory. We assume, without deciding, that this evidence constitutes trade usage evidence admissible under the UCC to determine whether there exists a latent ambiguity in the contract. After the Hurschler contract entered into force, Interior did not reduce or change the District's allotment of water. It was not until nine years later that Interior decided, on the advice of its field solicitor, to reduce the District's water allotment in proportion to delivery of water to PPR holders. Yet the Hurschler contract contains a clause providing that it was made "with the express understanding that ... the Colorado River water entitlement of [the District] shall not be increased in any way by virtue of this contract." Interior could not reasonably have believed that the District's contractual entitlement increased by virtue of the recognition of the Hurschlers' PPRs. Thus, this evidence does not render the contract between the District and Interior ambiguous.

The District also presents the minutes of its Board of Directors meeting in April 1969 to make the case that the contract is ambiguous. The minutes suggest that the District's Chairman thought at that time that water delivered to PPR holders would be added, not subtracted, from the District's allotment. This, too, is unhelpful. The minutes of the District's Board of Directors meeting do not represent evidence of any course of mutual conduct, trade usage, or performance and, thus, may not be considered. *See* UCC § 2–202. In the absence of such evidence, the contract is not ambiguous.

AFFIRMED.