830 F.2d 139
 The METROPOLITAN WATER DISTRICT OF SOUTHERN CALIFORNIA, a
public agency of the State of California, and the Coachella
Valley Water District, a public agency of the State of
California, Plaintiffs-Appellees,
v.
The UNITED STATES of America; Donald P. Hodel, Secretary,
U.S. Department of Interior, Defendants-Appellants,
and
QUECHAN INDIAN TRIBE; Fort Mojave Indian Tribe, and
Colorado River Indian Tribes,
Defendants-Intervenors-Appellants,
v.
STATE OF CALIFORNIA and State of Arizona, Defendants-Appellees.
 Nos. 86-6332, 86-6741.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 7, 1987.
Decided Oct. 14, 1987.
 
 Dale T. White (argued), Fredericks & Pelcyger, Boulder, Colo., for Fort Mojave Indian Tribe.
 William Strickland, Strickland & Altaffer, Tucson, Ariz., for Quechan Tribe.
 Scott B. McElroy, Melody L. McCoy, Native American Rights Fund, Boulder, Colo., William G. Lavell, Pamela S. Williams, Colorado River Indian Tribe, Parker, Ariz., for Colorado River Indian Tribes.
 Warren J. Abbott, Karen Tachiki, James F. Roberts, Metropolitan Water Dist. Los Angeles, Cal., Jerome C. Muys (argued), Washington, D.C., for Metropolitan Water Dist.
 Sarah P. Robinson (argued), F. Patrick Barry, Land & Natural Resources Div., Washington, D.C., for U.S.
 Anthony Ching, Sol. Gen., State of Ariz., Phoenix, Ariz., for State of Ariz.
 Justin McCarthy, Redwine & Sherrill, Riverside, Cal., for Coachella Valley Water Dist.
 Douglas Noble, Anthony M.Summers, Kenneth R. Williams, Deputy Atty. Gens., Office of the Atty. Gen., Los Angeles, Cal., for State of Cal.
 Appeal from the United States District Court for the Southern District of California.
 Before BROWNING, Chief Judge, FLETCHER and POOLE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellants, the United States and the intervenors, Indian Tribes,[1] bring this interlocutory appeal to challenge the district court's holding (1) that the Secretary of the Interior lacks authority to resurvey the boundary between the Fort Mojave Reservation and other public land; and (2) that, the district court has authority and intends to conduct a trial de novo to determine the boundaries of the Reservation.[2] We remand to the district court with direction to dismiss for lack of jurisdiction.
 
 FACTS
 
 2
 The Secretary of the Interior determined that the original survey of the Fort Mojave Reservation was incorrect and that the Reservation's corrected boundaries contained 3500 more acres than the old boundaries. The challenge is to the Secretary's order establishing the new boundary, but the actual dispute between the parties is over the Tribe's claim that it is entitled to an increase of water rights in the Colorado River because of the increase in the Reservation's acreage.
 
 
 3
 Appellees, the Metropolitan Water District of Southern California (MWD), and the Coachella Valley Water District are California public corporations engaged in the development, storage, and delivery of water to their member public agencies for municipal and domestic use. We refer only to MWD but the references are applicable equally to the Coachella Valley Water District. A major portion of MWD's water supply is obtained under contracts with the Secretary of the Interior for Colorado River water. Under the contracts, MWD's entitlement to water is subject to the satisfaction of entitlements belonging to entities, such as the Fort Mojave Indian Tribe (Tribe), that hold higher priorities.
 
 
 4
 In Arizona v. California, 373 U.S. 546, 600, 83 S.Ct. 1468, 1497, 10 L.Ed.2d 542 (1963) (Arizona I ) the Supreme Court established priorities of users of Colorado River water. It held that the Tribe's priority dates from the time of the creation of its reservation and based the amount of its entitlement on the "practicably irrigable acreage" in its reservation. Id. at 600-601, 83 S.Ct. at 1498. Contract purchasers such as MWD have lower priorities.
 
 
 5
 In Arizona I, although the Special Master had heard evidence and made recommendations as to the correct boundary for the Reservation, the court reserved the issue for later determination. The dispute as to where the boundary lies arises from inconsistencies in the 1870 legal description of the Hay and Wood Reserve, a portion of the Reservation. The Court allocated to the Tribe the quantity of water necessary to irrigate the practicably irrigable acreage of the reservation as calculated by the Special Master based on the old boundaries. However, the Court provided that: "[T]he quantities fixed ... shall be subject to appropriate adjustment by agreement or decree of this Court in the event that the boundaries of the respective reservations [including the Fort Mojave Indian Reservation] are finally determined." Arizona v. California, 376 U.S. 340, 345, 84 S.Ct. 755, 758, 11 L.Ed.2d 757 (1964) (Court Decree). The Court retained jurisdiction for the purpose of further modifications and orders that it might deem proper. In 1979 the Court entered a supplemental decree identifying the then perfected rights to the use of the mainstream water in each state and their priority dates as agreed by the parties. Arizona v. California, 439 U.S. 419, 99 S.Ct. 995, 58 L.Ed.2d 627 (1979) (Supplemental Decree). Before the Supplemental Decree was entered, new questions arose. Consequently, the Court appointed Judge Elbert Tuttle to conduct hearings on the various motions.
 
 
 6
 In June 1974, the Secretary of the Interior, pursuant to a resurvey he had ordered, determined that the original survey of the Fort Mojave Reservation was incorrect and readjusted the Reservation boundaries to enclose 3500 additional acres. Judge Tuttle, as Special Master, after hearing found that this was a final determination. Based on the Special Master's finding, the United States applied to the Supreme Court for a reallocation of water rights to increase the Tribe's share. Arizona v. California, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (Arizona II ). Recognizing that the Special Master's finding threatened to diminish its water allocations from the Colorado River, MWD filed this action in the district court for the Southern District of California challenging the Secretary's order. The district court initially stayed this case pending the Supreme Court's decision in Arizona II.
 
 
 7
 In Arizona II the Court, finding that the Secretary's determination of the Reservation boundary was not a final determination, apparently because it was made ex parte by the Secretary, id. at 636, 103 S.Ct. at 1400, declined to decide the case, suggesting that the dispute possibly could be decided in another forum. It specifically referred to this case then pending in the district court as a potential vehicle, stating: "At this juncture, we are unconvinced that the United States District Court for the Southern District of California, in which the challenge to the Secretary's actions has been filed, is not an available and suitable forum to settle these disputes." Id. at 638, 103 S.Ct. at 1401. The Court, however, recognized that there might be obstacles to the district court litigation:
 
 
 8
 We note that the United States has moved to dismiss the action filed by the agencies based on lack of standing, the absence of indispensable parties, sovereign immunity, and the applicable statute of limitations. There will be time enough, if any of these grounds for dismissal are sustained and not overturned on appellate review, to determine whether the boundary issues foreclosed by such action are nevertheless open for litigation in this Court.
 
 
 9
 Id.
 
 
 10
 After the Court's decision in Arizona II, the district court lifted its stay in this case. It found that it had jurisdiction, and that the Secretary had exceeded his statutory authority and had not complied with due process in ordering the resurvey. The district court decided it would hold a trial de novo to determine the correct boundary. Metropolitan Water District v. United States, 628 F.Supp. 1018, 1025 (S.D.Cal.1986). We granted the Tribe's motion for interlocutory review pursuant to 28 U.S.C. Sec. 1292(b).
 
 JURISDICTION[3]
 
 11
 The Government and the Tribe assert that the Quiet Title Act, 28 U.S.C. Sec. 2409a[4] governs this action and, that by its terms, the United States is immune from suit. MWD responds that the Government has waived its claim of sovereign immunity because it did not raise it before the district court and because it has litigated in Arizona I and II. Additionally, MWD claims that the Quiet Title Act does not apply to this action in any event, and asserts that the district court has jurisdiction under the Administrative Procedure Act and the McCarran Amendment.
 
 A. Waiver
 
 12
 The United States does not waive sovereign immunity by implication; any waiver must be unequivocally expressed. Chemehuevi Indian Tribe v. California State Bd. of Equalization, 757 F.2d 1047, 1052-53 (9th Cir.) rev'd on other grounds, 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985). Waivers of sovereign immunity are construed strictly and narrowly. Block v. North Dakota, 461 U.S. 273, 287, 103 S.Ct. 1811, 1819, 75 L.Ed.2d 840 (1983). For example, merely by instituting a suit, the United States does not consent to be sued on a counterclaim based on a cause of action for which it has not otherwise given its consent to be sued. See Chemehuevi, 757 F.2d at 1053; United States v. Drinkwater, 434 F.Supp. 457, 460 (E.D.Va.1977).
 
 
 13
 MWD suggests that by participating in the Arizona I and II litigation to obtain water rights for the Tribe, the United States has waived its sovereign immunity to any ancillary proceeding that might affect those rights.[5] It claims that the United States is litigating in the district court the identical claim it presented and litigated (unsuccessfully) before the Supreme Court. In Arizona II, at issue, however, was the allocation of water rights. Although the Court declined the reallocation and found that the Secretary's boundary determination was not a final determination that could serve as a basis for the allocation of additional water rights, it did not void the Secretary's action in ordering the resurvey. The authority of the Secretary to issue such orders was not litigated. An application to the Supreme Court under a continuing decree for a reallocation of water rights cannot be viewed, under any stretch of the imagination, as consent by the Secretary to suit by third parties to challenge the Secretary's authority and procedures in establishing Indian reservation boundaries.[6]
 
 B. Quiet Title Act
 
 14
 MWD brought suit under the Administrative Procedure Act, 5 U.S.C. Secs. 551-706 (APA). Section 702 of the APA waives sovereign immunity for suits against federal officers in which the plaintiff seeks nonmonetary relief. The APA, however, does not waive immunity as to any claims which are expressly or impliedly forbidden by "any other statute that grants consent to suit." The Quiet Title Act (QTA), 28 U.S.C. Sec. 2409a is such an act. Block v. North Dakota, 461 U.S. at 286, n. 22, 103 S.Ct. at 1819 n. 22. The QTA permits the United States to be named as a defendant in lawsuits seeking the adjudication of disputed title to land. However, when the United States claims an interest in real property based upon that property's status as trust or restricted Indian lands, the Government is immune from suit under the QTA. See United States v. Mottaz, 476 U.S. 834, 106 S.Ct. 2224, 2229-30, 90 L.Ed.2d 841 (1986); Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir.1987).
 
 
 15
 MWD asserts that the QTA does not apply here because it is not seeking to quiet title in itself. It claims rather that its objective is to prevent the Tribes from gaining an earlier water priority because of the additional land the survey includes in the Reservation. Although MWD may not be seeking to quiet title to the land in itself, it seeks a determination of the boundaries of the Reservation. The effect of a successful challenge would be to quiet title in others than the Tribe.
 
 
 16
 Congress, in passing the Indian lands exception to the QTA, explained that[t]he Federal Government's trust responsibility for Indian lands is the result of solemn obligations entered into by the United States Government. The Federal Government has over the years made specific commitments to the Indian people through written treaties and through informal and formal agreements. The Indians, for their part, have often surrendered claims to vast tracts of land. President Nixon has pledged his administration against abridging the historic relationship between the Federal Government and the Indians without the consent of the Indians.
 
 
 17
 H.R.Rep. No. 1559, 92d Cong., 2d Sess. (1972), reprinted in 1972 U.S.Code Cong. & Ad.News 4547, 4556-67. To allow this suit would permit third parties to interfere with the Government's discharge of its responsibilities to Indian tribes in respect to the lands it holds in trust for them. See Florida Dept. of Business Regulation v. United States Dept. of Interior, 768 F.2d 1248, 1253-55 (11th Cir.1985), cert. denied, 475 U.S. 1011, 106 S.Ct. 1186, 89 L.Ed.2d 302 (1986). MWD challenges the fundamental authority of the Secretary to establish reservation boundaries and to protect the property interests of Indian tribes. This it cannot do.
 
 C. Trust or Restricted Indian Lands
 
 18
 MWD relies on Spaeth v. United States Secretary of Interior, 757 F.2d 937 (8th Cir.1985) to argue that even if the QTA is applicable here, that the United States has not made the requisite showing that the lands at issue are "trust or restricted Indian land." The court in Spaeth, in considering the claim that the United States was immune under the Indian lands exception to the QTA, found that title problems, not clarified in the record below, made it impossible to determine whether parts of the land in question were "trust or restricted Indian lands." Accordingly, the court remanded the case to the district court to resolve the title dispute and to determine whether the United States had a substantial claim to the land. MWD's reliance on Spaeth is misplaced. The Secretary of the Interior has found the land in this case to be Indian lands; nothing in the record suggests that plaintiffs have superior title or, in fact, any title.
 
 
 19
 This circuit's recent Wildman case puts at rest any possible argument that MWD might assert in this regard. "Nothing in the statute [QTA] or its history suggests that the United States was to be put to the burden of establishing its title when it has a colorable claim and has chosen to assert its immunity on behalf of land of which the Government declares that it is the trustee for Indians." Id., at 1309. The Wildman court goes on to state that "[s]overeign immunity, therefore, prevents the district court from exercising jurisdiction. The immunity of the government applies whether the government is right or wrong." Id at 1309.
 
 D. McCarran Amendment
 
 20
 Finally, MWD asserts that if the QTA applies, the McCarran Amendment nonetheless permits suit here. The McCarran Amendment, 43 U.S.C. Sec. 666 provides that the United States is deemed to have waived its immunity in any suit for the adjudication of rights to the use of water of a river system or other source, or for the administration of such rights. The McCarran Amendment, however, does not authorize private suits to decide priorities between the United States and particular claimants, only suits to adjudicate the rights of all claimants on a stream. Dugan v. Rank, 372 U.S. 609, 617-18, 83 S.Ct. 999, 1004-05, 10 L.Ed.2d 15 (1963). This suit is not such a general adjudication.[7]
 
 CONCLUSION
 
 21
 We remand to the district court with direction to dismiss for lack of jurisdiction.
 
 
 
 [1]
 Quechan Indian Tribe, Fort Mojave Indian Tribe, and Colorado River Indian Tribes
 
 
 [2]
 The district court has not ruled as yet on boundary orders affecting the Colorado River and Fort Yuma reservations. The issues are the same as those presented by the ruling on the Fort Mojave reservation boundary order. The three tribes have sought the interlocutory appeal and join in one brief
 
 
 [3]
 Although not directly raised by the parties, this case presents the additional jurisdictional problem of absence of a case or controversy. MWD filed this action after Special Master Tuttle found that the Secretary's order adding 3500 acres to the Mojave Reservation was a final determination. The tribe then applied to the Supreme Court to have water rights reallocated on the basis of the Master's decision (Arizona II ). At that juncture, a case or controversy seems to have existed since the Secretary's determination had been declared final by the Special Master and was the basis for the Special Master's reallocation of water rights to the disadvantage of plaintiff. The Supreme Court, however, held that the Secretary's action was not a final determination. As long as the order is not final, MWD's water rights are not threatened because those rights cannot be reallocated until there is a final order. The Court's decision in Arizona II suggests that before the Secretary's finding that the Reservation included 3500 acres could be deemed final, the Secretary would have to provide "due process" to parties adversely affected and the Secretary's order would have to be judicially reviewed. There is a substantial question, therefore, whether a suit initiated by MWD at this time presents a case or controversy. However, since we conclude the district court was without jurisdiction on other grounds, we do not decide this question
 
 
 [4]
 28 U.S.C. Sec. 2409a(a) provides:
 The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights. This section does not apply to trust or restricted Indian lands....
 
 
 [5]
 MWD claims also that the United States' lawyer made admissions in the Supreme Court in Arizona II that constitute a waiver of immunity that bind the United States. The lawyer remarked that "I hope I do not have to--I disown the motion to dismiss which has been filed by the United States in the district court...." MWD also asserts as evidence of waiver a statement in the United States' amended answer in this case that "[w]here the action merely questions the accuracy of the determination of reservation boundaries, and the legal title to the lands is not at issue, we think the action may go forward pursuant to the Administrative Procedure Act." Because this suit involves more than just the accuracy of the Secretarial determinations, and does put at issue legal title in the sense that it seeks to deprive the Tribe of title, we do not interpret the above statements as a waiver of immunity
 
 
 [6]
 We note that at such time as the Secretary seeks the allocation of water rights based on altered boundaries that adversely affect MWD, the Government should not be able to claim sovereign immunity to avoid challenge to the propriety of the water allocation. See United States v. Martin, 267 F.2d 764, 769 (10th Cir.1959)
 
 
 [7]
 The ongoing litigation, however, in the Supreme Court under the continuing decree may be such a general adjudication