74 F.3d 1245
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
HAVASU LANDING HOMEOWNERS ASSOCIATION, Plaintiff,
and
HAVASU LAKE BETTERMENT ASSOCIATION, INC.; Needles Lodge;
Arthur E. Hickman; Jaqueline D. Hickman; Gordon
Benning Saucerman; Hazel D. Saucerman,
Plaintiffs-Appellants,
v.
Bruce BABBITT, et al., Defendants-Appellees.
 No. 94-55842.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 17, 1995.
Decided Jan. 22, 1996.
 
 1
 Before: HALL and NOONAN, Circuit Judges, PRO,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 The plaintiff-appellants in this case are several individuals and organizations who occupy federally owned land adjacent to Lake Havasu in San Bernardino County, California. They brought suit against the defendant-appellees, federal officials who are responsible for administering the lands in question, seeking a declaration that the lands they occupy are public lands not within an Indian Reservation. Appellees contend that the land is held in trust by the United States for the Chemehuevi Indian Tribe. They moved for dismissal under Fed.R.Civ.P. 12, claiming that the district court lacked subject matter jurisdiction on grounds of federal sovereign immunity. The district court granted the motion and we affirm.
 
 
 4
 * The Quiet Title Act ("QTA"), 28 U.S.C. Sec. 2409a, waives federal sovereign immunity for title disputes involving property in which the United States claims an interest. However, it expressly reserves sovereign immunity in disputes involving land held in trust for Indian Tribes. Appellants argue that the QTA does not govern this case because this is not technically a title dispute; they do not dispute the United States' title to the property, nor do they assert an ownership interest in the land. They seek only a determination of the capacity in which the United States holds title to the property.
 
 
 5
 However, this Circuit and others have applied the QTA to a variety of disputes that address less than an ownership interest in property. See, e.g., Alaska v. Babbitt ("Foster" Allotment), No. 94-35677, slip op. 225 (Jan. 11, 1996) (applying the QTA's Indian lands exception to dismiss a suit by the state of Alaska claiming a state highway right-of-way through land allotted to an Alaskan Native); Alaska v. Babbitt ("Albert" Allotment), 38 F.3d 1068 (9th Cir.1994) (same); Metropolitan Water Dist. v. United States, 830 F.2d 139 (9th Cir.1987) ("MWD") (applying the QTA to a dispute involving determination of the boundaries of a reservation in order to establish the extent of the Tribe's water rights), aff'd sub nom California v. United States, 490 U.S. 920 (1988); Shultz v. Department of Army, 886 F.2d 1157 (9th Cir.1989) (applying the QTA to a dispute involving a private landowner's public right of access over a road closed by the Army); accord Florida v. United States Dept. of Interior, 768 F.2d 1248, 1254 (11th Cir.1985) (holding that the QTA applies even though appellants do not assert an adverse claim of title to the land, because their claim would interfere with the equitable title), cert. denied, 475 U.S. 1011 (1986).
 
 
 6
 Admittedly, appellants do not seek any change in legal title to the property; the United States will still hold legal title regardless of the outcome. Appellants do, however, seek a change in equitable title--they want a declaration that the United States, and not the Chemehuevi Tribe, holds the equitable title to the property as well. Because the effect of such a result would be to vest equitable title in "others than the Tribe," MWD, 830 F.2d at 143, we hold that the QTA governs this title dispute.
 
 II
 
 7
 The Ninth Circuit has consistently held that in order to invoke the QTA's Indian lands exception the government must show that it has a "colorable claim" that the land is held in trust for an Indian tribe. Wildman v. United States, 827 F.2d 1306, 1309 (9th Cir.1987); MWD, 830 F.2d at 144; Albert, 38 F.3d at 1076. This Court has never elaborated on the extent of the government's burden, but it has pointed out that "[t]he very purpose of [sovereign immunity] is to prevent a judicial examination of the merits of the government's position." Wildman, 827 F.2d at 1309. "To the extent that the QTA allows any inquiry on the merits, that inquiry can extend no further than a determination that the government had some rationale for its claim." Albert, 38 F.3d at 1076. Moreover, "[t]he immunity of the government applies whether the government is right or wrong." Wildman, 827 F.2d at 1309.
 
 
 8
 Although appellants raise some doubt about the validity of the Reservation, Wildman and its progeny make clear that the government need not prove that the lands are held in trust for the Chemehuevis; it needs only a colorable claim. The government has met that burden in this case. Congress, the Interior Department, and the courts have treated this land as a valid reservation for decades. For example, when Congress authorized the taking of lands for the construction of Parker Dam it expressly authorized the taking of the Indians' rights to the Chemehuevi Reservation, and paid the Tribe over $100,000 as compensation. Act of July 8, 1940, 54 Stat. 744. Department of Interior opinions from 1939 and 1974 recognized the existence of the Chemehuevi Reservation. See Authority of Secretary to Determine Equitable Title to Indian Lands, 11 Op.Solic. 2071, 2072 (August 15, 1974) ("The Chemehuevi Reservation was established in 1907 on the ancestral homelands of the Chemehuevi Indians"); Obligation of the Metropolitan Water Dist. for Damages to Lands of Chemehuevi Indians, 57 Interior Dec. 87, 89 (1939) (noting that this area "has been occupied from time immemorial by the Chimehuevi [sic] Indians."). The Supreme Court and the Ninth Circuit have also noted the existence of the Reservation. See Arizona v. California, 373 U.S. 546, 595 n. 97, 596 n. 100 (1963) (upholding the water rights of various reservations along the Colorado River, including the Chemehuevi Reservation); Chemehuevi Indian Tribe v. California State Bd. of Equalization, 757 F.2d 1047, 1050 (9th Cir.), rev'd on other grounds, 474 U.S. 9 (1985) ("Since time immemorial, the Chemehuevi Indian Tribe has resided in the Chemehuevi Valley ... in the area that is now part of the Chemehuevi Indian Reservation.").
 
 
 9
 Admittedly, appellants have raised several good arguments questioning whether the Reservation was properly established. Nonetheless, the federal appellees have asserted a colorable claim showing some rationale behind their argument that the land is held in trust for the Chemehuevis. Therefore, the government has not waived its sovereign immunity to suit, and the district court properly dismissed this case for lack of subject matter jurisdiction.
 
 III
 
 10
 Appellants sought to avoid the government's assertion of sovereign immunity by bringing an "officer's suit"--a suit alleging that the named government officers' actions were ultra vires or unconstitutional and, therefore, may not be attributed to the sovereign. If successful, such a suit can defeat an officer's claim of federal sovereign immunity.
 
 
 11
 However, the Supreme Court has expressly held that "Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." Block v. North Dakota, 461 U.S. 273, 286 (1983). The Court noted that if plaintiffs are allowed to avoid the provisions of the QTA by instituting an officer's suit, then "the Indian lands exception to the QTA would be rendered nugatory." Id. at 284-85. Thus, the Court has specifically proscribed officer's suits as a means to divest the government's sovereign immunity in quiet title actions barred by the QTA's Indian lands exception.
 
 
 12
 The Ninth Circuit recently reaffirmed the Supreme Court's holding in Block, and held that claimants may not circumvent the QTA's Indian lands exception through the use of an officer's suit. Foster, slip op. at 234; see also MWD, 830 F.2d at 143 (rejecting a suit challenging the Secretary's authority to resurvey the boundary of an Indian Reservation); McIntyre v. United States, 789 F.2d 1408, 1410-11 (9th Cir.1986) (holding that Block precluded a homesteader's Administrative Procedure Act Sec. 702 challenge to the Bureau of Land Management's trespass action against him), rev'd on other grounds, Fadem v. United States, 52 F.3d 202 (9th Cir.1995). In light of Block's holding that the QTA is the exclusive means to challenge the United States' title to real property, we must reject appellants' officer's suit.
 
 IV
 
 13
 The district court's dismissal of this suit for lack of subject matter jurisdiction on grounds of federal sovereign immunity is hereby AFFIRMED.
 
 
 
 *
 The Honorable Philip M. Pro, United States District Judge for the District of Nevada, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3