**Craig WENDT, Nancy Colburn, and Theodora Goodgame, Plaintiffs,**

v.

**Edward D "Tito" SMITH, Chairman of the Chemehuevi Indian Tribe; Chemehuevi Indian Tribe; and Chemehuevi Tribal Court, Defendants.**

**No. 02–1361–VAP (SGLx).**

United States District Court, C.D. California.

March 19, 2003.

Dennis J. Whittlesey, Thad S. Huffman, Jackson & Kelly, Washington, DC, Michael Steele, Michael Steele Law Offices, Foothill Ranch, CA, for plaintiffs.

Lester J. Marston, Rapport & Marston, Ukiah, CA, for defendants.

## ORDER GRANTING MOTION TO DISMISS

PHILLIPS, District Judge.

Plaintiffs' Motion to Dismiss came before the Court for hearing on March 10, 2003. After reviewing and considering all papers filed in support of, and in opposition to, the Motion, as well as the arguments advanced by counsel at the hearing, the Court GRANTS the Motion without leave to amend.

## I. BACKGROUND

### A. Plaintiffs' Allegations

Plaintiffs Craig Wendt ("Wendt"), Nancy Colburn ("Colburn"), and Theodora Goodgame ("Goodgame") seek review of an Opinion and Order of the Chemehuevi Tribal Court ("Tribal Court") ordering the eviction of Plaintiffs from their residences.

Plaintiffs allege that there is no lawfully created Chemehuevi Reservation and that the Tribal Court's Order therefore exceeds its jurisdiction. According to Defendants, title of the Reservation is held by the United States in trust for the Chemehuevi Tribe ("Tribe").

In 1941, the Secretary of the Interior designated portions of land in the Chemehuevi Indian Reservation to build the Parker Dam pursuant to the Parker Dam Act of July 8, 1940. (Smith Decl., ¶ 6; Webb Decl, ¶ 6.) The result was Lake Havasu. The lake level, however, did not rise to the predicted elevation line, leaving a strip of land owned by the United States "between the high-water mark of Lake Havasu (i.e., 450th contour line) and the 465th contour line (i.e., those lands originally designated by the Secretary of the Interior)." (Webb Decl, ¶ 6.) For over 30 years, the United

States, through the Bureau of Land Management and the United States Fish and Wildlife Service, issued permits to non-Indians to operate concessions and build small cabins or vacation homes on the property. (Webb Decl., ¶ 7.) In 1974, Secretarial Orders restored "equitable ownership" to the Tribe of this Lake Havasu "Shoreline Area" which consisted of all land between the 450th and 465th elevation lines. (Webb Decl., ¶ 7, Exh. B.) This area includes land commonly referred to as the "Colony" where Plaintiffs reside. (Smith Decl., ¶ 8.)

Several permit-holders in the Shoreline Area brought suit challenging the validity of the 1974 Secretarial Order. *Havasu Landing, Inc., et al., v. Morton, et al.,* United States District Court for the Central District of California, Case No. CV 74–3665 EC ("*Morton*"). The parties entered into a settlement agreement ("Settlement") before the case went to trial. According to the Settlement, the Tribe had "full equitable title to all lands within the Chemehuevi Indian Reservation riparian to Lake Havasu." (Settlement, Smith Decl., Exh. A at 8.) All of the *Morton* plaintiffs signed a Release ("Release") agreeing never to challenge the legality of the Secretarial Orders. (Smith Decl., ¶ 9, Exh. A at 15.) The Release stated: "The releases, covenants, agreements, representations, and waivers herein shall be binding upon and inure to the benefit of the agents, representatives, heirs, successors and assigns of the parties to this agreement." (*Id.*, Exh. A at 17.) As consideration, the Tribe entered into leases with the *Morton* plaintiffs that expired on July 1, 1990.

Plaintiff Goodgame was a party to the Settlement and signed the Release for Lot # 18. (Smith Decl., ¶¶ 10, 12, Exh. B.) Goodgame's lease expired on July 4, 1990. (*Id.*, ¶ 12.) She entered into another lease, which was approved by the Tribe and the Secretary of the Interior. This lease expired on July 3, 1995. (*Id.*, ¶ 14, Exh. F.) Goodgame was offered a new lease with the Tribe and refused to accept it. (*Id.*, ¶ 17.) Goodgame has not paid rent or other compensation to the Tribe since July 3, 1995. (Esquerra Decl., Exh. A, T. 29, Smith Decl., ¶ 5.)

Plaintiff Colburn is an assignee of the permit granted to Ernest and Linda Higgenbothem, who were assignees of the permit granted to Leo and Peggy Rossier. The Rossiers were original parties to the Settlement and signed the Release. (Smith Decl., Exhs. C, D, E.) Colburn's lease for Lot # 40 expired on July 4, 1990. (*Id.*, ¶ 12.) She was offered a new lease with the Tribe and refused to accept it. (*Id.*, ¶ 13, 17.) Colburn has not paid rent or other compensation to the Tribe since July 4, 1990. (Esquerra Decl., Exh. A, T. 29, Shirley Smith Decl., ¶ 4.)

Plaintiff Wendt entered into a lease with the Tribe for Lot # 38 that expired on July 3, 1995. (Smith Decl., ¶ 15, Exh. G.) Wendt has not had a lease since it expired. (*Id.*) Wendt has paid no rent or other compensation to the Tribe since July 3, 1995. (Esquerra Decl., Exh. A, T. 29, Shirley Smith Decl., ¶ 7.)

**B. Procedural History**

On June 20, 2001, the Tribe instituted an action in Tribal Court against Plaintiffs alleging trespass. The Tribal Court issued an Order on August 23, 2002, ordering the Plaintiffs ejected from the property ("Tribal Court Order"). The Tribal Court issued a Judgment on October 25, 2002. Plaintiffs' December 16, 2002, Motion for Preliminary Injunction was denied on January 30, 2003. On February 10, 2003, Defendants filed a Motion to Dismiss ("Mot.") along with a Request for Judicial Notice ("Jud Not."). Plaintiffs filed an Opposition ("Opp'n") on February 24, 2003. Defen-

dants filed an additional Request for Judicial Notice ("Jud.Not.2") and a Reply ("Reply") on March 3, 2003.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a district court must dismiss an action if the court lacks jurisdiction over the subject matter of the suit Fed.R.Civ.P. 12(b)(1). The party seeking to invoke federal jurisdiction bears the burden of establishing that jurisdiction exists. *Scott v. Breeland,* 792 F.2d 925, 927 (9th Cir.1986). A complaint will be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction if (1) the cause does not "arise under" any federal law or the United States Constitution, (2) there is no cause or controversy within the meaning of that constitutional term, or (3) the cause is not one described by any jurisdictional statute. *Baker v. Carr,* 369 U.S. 186, 198, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

## III. JUDICIAL NOTICE

Defendants ask the court to take judicial notice of the various opinions of the U.S. District Court and unpublished opinions of the Ninth Circuit. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned Fed.R.Evid. 201(b). A court may not take judicial notice of a fact that is "subject to reasonable dispute." Fed.R.Evid. 201(b). The Plaintiffs have not opposed the request. Since the accuracy of these documents is not questioned, the Request is granted.

## IV. DISCUSSION

Defendants allege that the Tribe and its officers enjoy sovereign immunity from suit since the Tribe never consented to suit. In addition, this action is barred by the Quiet Title Act ("QTA"). Plaintiffs contend that Defendants consented to suit in federal court. Plaintiffs also argue that the Quiet Title Act does not apply in this case because this case merely challenge jurisdiction of the Tribal Court, not title to the land.

### A. Sovereign Immunity

Defendants argue that they are immune from suit under the principle of sovereign immunity. (Mot at 2.) *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). The Tribe cannot be sued without tribal consent that is unequivocally indicated. *Rehner v. Rice,* 678 F.2d 1340, 1351 (9th Cir. 1982), *rev'd on other grounds,* 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983). This immunity applies "irrespective of the merits" of the claim asserted against the Tribe. *Rehner,* 678 F.2d at 1351. It also applies to tribal officials acting in their official capacity within the scope of their authority. *Snow v. Quinault Indian Nation,* 709 F.2d 1319, 1321 (9th Cir.1983), *cert. denied,* 467 U.S. 1214, 104 S.Ct. 2655, 81 L.Ed.2d 362 (1984). Plaintiffs argue, however, that "tribal immunity is not a bar to actions which allege conduct that is determined to be outside the scope of a tribe's sovereign powers." (Opp'n at 10. *Citing Snow,* 709 F.2d at 1321.)

Plaintiffs also argue that Defendants waived sovereign immunity by expressly consenting to be sued in this Court. (Opp'n at 11–12.) The mere acknowledgment by the Tribal Court that Plaintiffs intended to file this action, however, does not amount to an express waiver of its immunity.

On the other hand, as the Court discussed in its Order Denying a Preliminary Injunction, Plaintiffs have expressly submitted to the jurisdiction of the Tribal

Court. As a result, this challenge to its jurisdiction is waived. Further, tribal employees and officials are specifically protected by the Tribe's Limited Liability Ordinance, so claims against individual defendant Edward D. "Tito" Smith, acting in his official capacity, are also barred by Tribal law. (Mot. at 5–6.)

## B. Quiet Title Act

■ Defendants argue that this suit is barred because the United States is an indispensable party who enjoys sovereign immunity pursuant to the Indian Lands Exception to the QTA. (Mot. at 6.) According to the Quiet Title Act ("QTA"), the exclusive means to adjudicate a disputed title to real property in which the United States claims a interest is the QTA. *See Block v. North Dakota,* 461 U.S. 273, 284–86, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). The United States is immune, however, from suit when the interest is "based upon that property's status as trust or restricted Indian lands." 28 U.S.C. § 2409a(a); *Metropolitan Water District of Southern California v. United States,* 830 F.2d 139, 143 (9th Cir.1987), *Block,* 461 U.S. at 284–86, 103 S.Ct. 1811.

According to the legislative history of the QTA, this exception was "necessary to prevent abridgement of 'solemn obligations' and 'specific commitments' that the Federal Government [has] made to the Indians regarding Indian lands." *United States v. Mottaz,* 476 U.S. 834, 843, n. 6, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986) (*citing* H.R.Rep. No. 92–1559, p. 13 (1972), U.S.Code Cong. & Admin.News 1972, pp. 4547, 4557).

■ This exception applies even where the Plaintiff is not seeking to quiet title in itself, but where "a determination of the boundaries" would have the effect of quieting title in others than the Tribe. *Metropolitan Water,* 830 F.2d at 143. The United States' claim that the disputed property is Indian lands merely needs to be "colorable" for the exception to apply. *State of Alaska v. Babbitt,* 182 F.3d 672, 675 (9th Cir.1999). In *Metropolitan Water,* the Court held that "nothing in the [QTA] or its history suggests that the United States was to be put to the burden of establishing its title when it has a colorable claim and has chosen to assert its immunity on behalf of land of which the Government declares that it is the trustee for Indians." 830 F.2d at 144 (*quoting Wildman v. United States,* 827 F.2d 1306, 1309 (9th Cir.1987)).

■ Plaintiffs allege they are merely challenging "the tribal court's purported jurisdiction." (Opp'n at 13.) This Court has jurisdiction to determine whether a tribal court has exceeded the lawful limits of its jurisdiction. *National Farmers Union Insurance Companies v. Crow Tribe of Indians,* 471 U.S. 845, 853, 105 S.Ct. 2447, 85 L.Ed.2d 818 (1985). Plaintiffs argue that the QTA is inapplicable because they are not challenging title to the land nor is the dispute involving the "fixing of a boundary." (Opp'n at 13.) Other district courts in this Circuit have addressed and rejected this argument on previous occasions. *See Havasu Landing Homeowners Association v. Babbitt,* U.S. District Court for the Central District of California, Case No. CV–92–6184–TJH, *Saucerman v. Babbitt,* U.S. District Court for the District of Arizona, Case No. CV–01–182–PHX. zAs in *Havasu* and *Saucerman,* Plaintiffs' arguments are premised on a theory that would require the Court to determine whether the United States, and not the Chemehuevi Tribe, holds equitable title to the property. The effect of such a result would vest equitable title in "others than the Tribe." *Metropolitan Water Dist.,* 830 F.2d at 143.

■ The purpose of the QTA is to "prevent a judicial examination of the mer-

its of the government's position ... [and] ... The immunity of the government applies whether the government is right or wrong." *Wildman,* 827 F.2d at 1309. Although Plaintiffs present evidence that questions the nature of the status of title, there is no serious question of whether the United States even has a "colorable claim." As discussed in the Court's Order Denying a Preliminary Injunction, Congress, the Department of the Interior, and the courts have all recognized this land as a valid reservation. *See also, Arizona v. California,* 373 U.S. 546, 595 n. 97, 596 n. 100, 83 S.Ct. 1468, 10 L.Ed.2d 542 (1963) (upholding water rights of various reservations, including the Chemehuevi Reservation), *Chemehuevi Indian Tribe v. California State Bd. of Equalization,* 757 F.2d 1047, 1050 (9th Cir.), *rev'd on other grounds,* 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985) ("Since time immemorial, the Chemehuevi Indian Tribe has resided in the Chemehuevi Valley ... in the area that is now part of the Chemehuevi Indian Reservation."). Since the United States has a colorable claim to the land in the interest of the Chemehuevi Tribe, it is a necessary and indispensable party. Pursuant to the QTA, however, the United States enjoys immunity and thus the claims are barred.

## V. CONCLUSION

For the aforementioned reasons, Defendants' Motion to Dismiss is GRANTED.